IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DESTINY CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | Case No. 19-1033-JWB-GEB |
| ) | |
| NEWMAN UNIVERSITY, INC. and ) | |
| VICTOR TRILLI ) | |
| Defendants, ) | |
| ) | |

**RESPONSE TO DEFENDANTS'**
**MOTION TO DISMISS COUNTS 6, 7, 8, AND 9 OF PLAINTIFF'S COMPLAINT**

COMES NOW Plaintiff, Destiny Clark, by and through her attorneys, Jennifer M. Hill and Corey M. Adams of McDonald Tinker PA, and submits the following response to Defendants' Motion to Dismiss counts 6, 7, 8, and 9 of Plaintiff's Complaint. For the reasons stated herein, Defendants' motion should be denied.

**INTRODUCTION**

This lawsuit is one of many cases pending against Newman University, Inc. ("Newman") arising out of claims by former employees regarding Newman's violations of, among other laws, Title VII, Title IX, and the Equal Pay Act. See Also U.S. District Court for the District of Kansas Cases *Mandy Greenfield v. Newman University Inc., et al.,* 18-2655-DCC-TJJ; *John Walker v. Newman University, Inc., et al.*; 19-2005-DDC-TJJ*; Cindy Louthan v. Newman University Inc.,* 18-1180-JWB-ADM; and Sedgwick County District Court Case *Ellen Gardner v. Newman University, Inc.,* 18-CV-2767.

Specific to Ms. Clark, she alleges that Newman University violated Title VII of the Civil Rights Act of 1964, the Equal Pay Act pursuant to 29 U.S.C. § 206(d), Title IX of Education Amendments of 1972, and Kansas common law. As to the federal claims, Ms. Clark claims that,

by subjecting Ms. Clark to discrimination on the basis of her gender, retaliation for filing a Title IX complaint up to and including her apparent "suspension" during the Title IX investigation, the apparent adoption of the conduct of Ms. Clark's supervisor, and the continuing hostility and blatant unprofessionalism she was subjected to daily which constitute a hostile work environment, Defendants are liable under these federal statutes.

Separately, Ms. Clark makes state law claims against Defendant Trilli for intentional infliction of emotional distress and against Defendant Newman for negligent hiring, supervising, and training. The state law claims against Defendant Newman stem from conduct engaged in by Defendant Trilli and a student athlete of Defendant Newman. Specifically, Ms. Clark was forced to endure constant harassment, to the point of fearing for her safety, from a student athlete with no intervention from Defendant Newman despite a Sedgwick County District Court protective order in place to eliminate contact between Ms. Clark and this student athlete. Ms. Clark alleges, in part, that Defendant Newman was negligent in failing to properly protect Ms. Clark from this student. Ms. Clark also alleges that Defendant Newman was negligent in preventing Defendant Trilli from committing the tort of outrage against her.

The state law claims against Defendant Trilli stem from his outrageous conduct towards Ms. Clark. This conduct includes, in part, the constant and pervasive belittling of her in front of her team and coworkers, daily inappropriate conduct by Defendant Trilli against Ms. Clark, and Defendant Trilli's blatant and constant retaliation against Ms. Clark for making a Title VII and Title IX complaint. Further, Trilli unapologetically supported the student athlete Ms. Clark contends was harassing her. Trilli never provided any support to Ms. Clark in her conflict with this issue.

Defendants filed a motion to dismiss Ms. Clark's state law claims. (Doc. 6 -7, Defendant's Motion to Dismiss Counts 6, 7, 8, and 9 of Plaintiff's Complaint and Memorandum in Support). Specifically, Defendants claim that Plaintiff has not sufficiently pled an intentional infliction of emotional distress claim and that Kansas law does not support a claim of negligence against Defendants. Both of Defendants' arguments miss the mark.

## STATEMENT OF FACTS

The following alleged facts relevant to Ms. Clark's state law claims against Defendants were taken verbatim from her Complaint, as numbered in Ms. Clark's Complaint. (*See* Doc 1, Complaint). For purposes of Defendants' motion, these facts must be assumed to be true.

23. After conflicts initially arose, Defendant Trilli started coming into Ms. Clark's office to "talk". The nature of the discussions was highly personal and upsetting to Ms. Clark. These discussions included questions about her dating life, whether or not she was going to have children, her hair styles and other personal matters. Ms. Clark had a male friend intervene on her behalf (asked him to ask Defendant Trilli to stop these conversations) and eventually these meetings stopped. Upon information and belief, male coaches were not subjected to highly personal and inappropriate one on one meetings with Defendant Trilli.

24. Once those meetings stopped, whenever Ms. Clark reported a conflict or asked for Defendant Trilli to assist in a scheduling problem, Defendant Trilli would simply demand that Ms. Clark acquiesce to men's basketball team's demands.

25. In multiple meetings with men's basketball coaching staff, Ms. Clark was belittled, openly mocked and treated with hostility. Defendant Trilli was present at these meetings and made no effort to mediate the conflict or effectively manage the problems with the coaches' schedules.

27. On multiple occasions, after meetings with men's basketball coaching staff and Defendant Trilli, individuals would mock Ms. Clark in front of her team and other athletes.

28. Ms. Clark was advised by another female coach that if the other coach wanted anything from Defendant Trilli, she would just cry in front of him to get her way. This colleague had been coaching at Defendant Newman for a number of years and told Ms. Clark this method was the most effective way to get Defendant Trilli to help her.

29. Ms. Clark had repeated conflict with one specific student athlete, a male basketball player. This individual sexually harassed members of the women's volleyball team, interrupted the volleyball team's official practice and eventually escalated with two specific physical confrontations on September 1, 2016 and October 2, 2017.

30. Ms. Clark complained about this athlete to his coaches on the basketball team and to Defendant Trilli from fall semester, 2015 for the next two years.

31. When Ms. Clark complained about this athlete, she was told she "did not understand him," that she needed to be "patient" because he had a difficult childhood and that she was overreacting. Further she was advised that this student's coaches would "handle" it. The student's conduct never changed.

32. The athlete was employed in a work study program and worked as a janitor around the athletic department. On repeated occasions, after Ms. Clark complained to basketball coaches about this athlete, volleyball team equipment went missing. Ms. Clark reported the stolen property and repeatedly confronted the athlete's coaches and Defendant Trilli with evidence that she believed established this student had stolen volleyball team property.

33. Stolen property from the volleyball locker and storage area had to be replaced out of the volleyball team's budget.

34. The student athlete openly disrupted Ms. Clark's practices. Ms. Clark repeatedly had to request the athlete to leave the gym during her teams practice time.

35. Despite the repeated complaints and confrontations with this athlete, the student had a two-page full color article about him in the Fall 2017 publication, *Newman University Magazine*. The decision to feature this student was approved by Defendant Trilli and President Noreen Carocci.

36. On October 2, 2017, the athlete was listening to very loud music with obscenities from a stereo immediately before the volleyball team's practice. Ms. Clark approached the student and told him it was time to go and it was her team's practice time. The student turned his music louder.

37. Ms. Clark asked the student to leave the gym again, and this time turned off his music. The student turned the music back on and ignored her. On a final occasion, Ms. Clark spoke very loudly to him and told him he needed to leave. The student stormed into Ms. Clark's face screaming. He charged at Ms. Clark in a threatening manner

38. Though she was very scared, Ms. Clark walked away from the student, and immediately walked into Defendant Trilli's office to report the event. Further, Ms. Clark advised Trilli she did not want this athlete at the volleyball game the following day. Trilli never responded to her request to keep that student from attending the game. Ms. Clark then asked the head of Newman security to keep the student from attending the women's volleyball game.

39. Ms. Clark contacted the head of security regarding security concerns and requested that this student be kept out of the game on October 3, 2017. The head of security then discussed the matter with the Dean of Students.

40. After the discussion, the Dean of Students banned this student from DeMattias and O'Shaughnessy buildings. Despite being aware of the ban, this student continued to go to the building and used the computer in the coaches' copy room, literally down the hall from Ms. Clark's office.

41. On November 10, 2017, the Dean of Students wrote a warning to this student regarding his violation of the building ban and advising this student that he would be subjected to disciplinary action if he entered the building again.

42. On November 20, 2017, Ms. Clark sought court assistance and obtained a temporary Protection from Abuse/ Protection from Stalking order from Sedgwick County District Court. The Court initially entered a temporary order restricting the athlete's physical location to ensure he was never around Ms. Clark. He was banned from the athletic department building both legally and by the University.

43. At a subsequent hearing on the PFS, on December 7, 2017, the student advised the Sedgwick County District Court that he was nearly done with school and "never coming back to Kansas" once he was done with classes in December 2017. At this hearing, the student also presented handwritten notes from Defendant Trilli of Trilli's "investigation" into the conflict with Ms. Clark. The student told the judge that Trilli advised the student that the student was not at fault and that Ms. Clark was lying.

The Court's PFA order indicated that the temporary order remains in place until he left the state. After his studies were complete and he left the state, then the Order would expire.

44. Throughout this series of events, Ms. Clark regularly communicated with the Newman director of security and John Walker, the Title IX investigator about the conflict with this student. The director of security advised Ms. Clark he was not sure what he would be able

6

to do to keep her safe from this individual and agreed with Ms. Clark's concerns, noting that this student appeared capable "of anything."

45. This male student athlete finished his coursework at Defendant Newman in December 2017. In the spring of 2018, because of history and safety concerns, Ms. Clark began inquiring about whether or not he would attend spring graduation festivities and "walk" with his class.

46. Defendant Newman's appointed contact person for Ms. Clark, Jennifer Gantz, provided no answers to Ms. Clark for weeks.

47. Eventually, Ms. Gantz advised Ms. Clark the athlete would be at graduation but Newman did not really think Ms. Clark would attend the graduation so they didn't think it mattered. Ms. Clark advised that she intended to attend graduation, and asked if the University would make provisions for her safety.

48. Defendant Newman did nothing to aid Ms. Clark. Instead, Ms. Clark coordinated an escort from the security department, she advised the Defendant Newman of rules, including not allowing the student into the athletic department and she told the head of security about her concerns.

49. At no time did the Defendants take any of Ms. Clark's concerns about this student athlete seriously; they did not discipline him for inappropriate conduct; they failed to enforce a Court order on him; Newman even "highlighted" this student in their own magazine and publication and the Defendants generally subverted Ms. Clark's authority as a coach and staff. There were no consequences for this athlete for his conduct and he acted with full impunity by Defendants.

## ARGUMENT AND AUTHORITIES

### I.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The Supreme Court clarified this pleading standard in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal*. Reading both decisions together, the United States Supreme Court has stated that to withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955.

Following the Supreme Court of the United States' decision in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), courts across the country have come to inconsistent conclusions as to a plaintiff's burden at the pleading stage when applying the newly articulated pleading standards addressed in *Twombly*/*Iqbal*. *See e.g. In re Travel Agent Comm'n Antitrust Litig.,* 583 F.3d 896, 911 (6th Cir.2009) (construing *Twombly* as requiring a plaintiff to plead enough specific facts "to raise a reasonable expectation that discovery will reveal evidence"); *Id.* at 912 (Merritt, J., dissenting) (stating that the majority has "seriously misapplied the new standard by requiring not simple 'plausibility,' but by requiring the plaintiff to present at the pleading stage a strong probability of winning the case"); *Tamayo v. Blagojevich,* 526 F.3d 1074, 1083 (7th Cir.2008) (stating that *Twombly* "did not ... supplant the basic notice-pleading standard"). Accordingly, it is prudent here to properly address what is required of Ms. Clark at this stage of her lawsuit.

The Court explained two principles underlying the new standard: (1) when legal conclusions are involved in the complaint "the tenet that a court must accept as true all of the

8

allegations contained in a complaint is inapplicable to [those] conclusions," and (2) "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 129 S.Ct. at 1949-1950. Thus, mere "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Accordingly, Ms. Clark does not dispute that in examining a complaint under Rule 12(b)(6), this Court should disregard conclusory statements and look only to whether the remaining factual allegations plausibly suggest that the Defendants are liable.

It is important to notes, however, as noted by the Tenth Circuit in *Gee v. Pacheco,* 627 F.3d 1178, 1185 (10th Cir.2010), that "the plausibility standard has been criticized by some as placing an improper burden on plaintiffs," where a chief criticism "is that plaintiffs will need discovery before they can satisfy plausibility requirements when there is asymmetry of information…." Thus, to address this criticism, the Tenth Circuit has stated that this new standard is merely a "refined standard." *Kansas Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1214 (10th Cir.2011). In applying this new, refined standard, the Tenth Circuit has held that plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir.2008) (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). Further, it is worth noting that "[t]he nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn,* 656 F.3d at 1215; *see also Iqbal,* 129 S.Ct. at 1950 ("Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."). Thus, the Tenth Circuit has held that the *Twombly/Iqbal* standard is "a middle ground

between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do." *Robbins,* 519 F.3d at 1247 (internal quotation marks and citations omitted).

Accordingly, Rule 8(a)(2) is still the law. The Tenth Circuit has stated that "there is no indication the Supreme Court intended a return to the more stringent pre-Rule 8 pleading requirements." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) [citing *Iqbal,* 129 S.Ct. at 1950 ("Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era....")]. As the Supreme Court held in *Erickson v. Pardus,* 551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007), which it decided a few weeks after *Twombly,* under Rule 8, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Id.* at 93, 127 S.Ct. 2197 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955 (alteration in original)); *see also al–Kidd v. Ashcroft,* 580 F.3d 949, 977 (9th Cir.2009) ("*Twombly* and *Iqbal* do not require that the complaint include all facts necessary to carry the plaintiff's burden."). In sum, "the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint…." *Khalik*, 671 F.3d at1191. Ms. Clark has clearly met this burden.

II.     **MS. CLARK HAS PLEAD SUFFICIENT FACTS TO WITHSTAND A MOTION TO DISMISS HER INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS CLAIMS.**

Defendants disingenuously claim that Ms. Clark only restates the elements of a claim of the tort of outrage without giving any factual details regarding the outrageous conduct of Defendant Trilli. In fact, Ms. Clark makes plenty of factual claims regarding his conduct, and accordingly her claim should not be dismissed.

Kansas court certainly allow claims of outrage against former supervisors, even in the employment context. *See Oliphant v. Perkins Restaurants Operating Co.,* 885 F. Supp. 1486, 1489-90 (D. Kan. 1995); *Gomez v. Hug,* 7 Kan. App. 2d 603, 645 P.2d 916 (1982); *Laughinghouse v. Risser*, 786 F. Supp. 920, 929 (D. Kan. 1992). In *Oliphant*, a sexual harassment case that this Court allowed to go to trial, the evidence showed that the plaintiff's supervisor was constantly critical, ranted, cursed, called the plaintiff "stupid," attacked plaintiff's personal life, threatened to fire plaintiff, screamed, threw files, and constantly engaged in sexual overtones. *Oliphant,* 885 F.Supp. at 1492. The court held that this was sufficient evidence to prove the tort of outrage, denying defendant's motion for a new trial. *Id*. In *Gomez*, the Kansas Court of Appeals allowed a case to go to a jury on a claim of outrage based on one instance described in the plaintiff's deposition testimony, recounting what his supervisor said:

> "You are nothing but a fucking spic and a Mexican greaser,' and he kept repeating it over and over, and he kept shaking his fist in front of me. I was froze because I was afraid of the man. For the first time in my life, I was terrified of one man calling me that. I was afraid for my job. I was afraid for my family."

*Gomez,* 7 Kan.App.2d at 616. The court there held that:

> While it is true this testimony demonstrates plaintiff's concern for his job and the impact its loss would have on his family, we are of the opinion reasonable factfinders might differ as to whether this testimony, if found true, also establishes apprehension of bodily harm. It is a close call, but I find it is for a jury to decide upon presentation and testing of evidence at trial.

*Id.*

Here, Ms. Clark alleges in her Complaint, among many other things, that she was subject to: (1) being threatened by Defendant Trilli when she made complaints about treatment of herself or her team, (2) being physically charged at by a student in a threatening manner without action from Defendant Trilli, (3) hearing that Defendant Trilli actually supported the student, (4) Defendant Trilli's unapologetic refusal to acknowledge a protective order issued by the

Sedgwick County District Court despite a memo circulated by Newman officials stating that the student athlete should not be in the building Ms. Clark worked in, (5) being singled out by Defendant Trilli for personal and inappropriate conversations about her private life, (6) being belittled and treated with disdain during her attempts to address issues related to her conflicts with co-workers and student athletes from other teams, 7) refusal to provide Ms. Clark her annual evaluation despite repeated requests for the same, particularly following her Title IX complaint, (8) requiring Ms. Clark to participate in "counseling" to discuss her feelings and try to compel her to take a personality test, and (9) by being treated worse when she filed a charge of discrimination with the EEOC. Even if none of these, taken on their own, are enough to show outrageous conduct, taken together as a whole could be enough to show outrageous conduct. *Bernard v. Doskocil Companies, Inc.*, 861 F. Supp. 1006, 1015 (D. Kan. 1994) ("In the court's view, none of the incidents, taken individually, is 'so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society….' Nevertheless, taking all of the incidents as a whole…" could withstand summary judgment.). As stated above, Ms. Clark is not required to prove her claim at the this pleading stage. Much more could come out in discovery. Simply put, dismissing the case at this stage would be premature.

Additionally, Ms. Clark does not need to state every fact that might support her claim. At this stage, the facts alleged by Ms. Clark certainly suggest that she could bring a plausible claim of the tort of outrage against Defendant Trilli. One of the other pending lawsuits filed by a former employee of Defendant Newman, Mandy Greenfield, states that Defendant Trilli "verbalized his intent to retaliate against Clark. *See* Case No. 18-2655-DCC-TJJ, Doc. 1, ⁋ 22. Upon learning that Clark filed a Title IX complaint." This statement is just one example of the

additional facts that could come out in litigation. Further, this allegation plainly establishes Trilli's mindset at the relevant timeframe – retaliate and punish Ms. Clark. Ms. Clark has certainly provided enough facts to meet the minimum threshold under Rule 8(a)(2). Defendants' motion should be denied and Plaintiff should be allowed to conduct discovery on this claim.

**III.     KANSAS LAW ALLOWS CLAIMS OF NEGLIGENCE AGAINST AN EMPLOYER WHEN NOT IN THE CONTEXT OF A FORMER EMPLOYEE'S TERMINATION.**

Defendants, in their motion, claim that Kansas courts have repeatedly refused to recognize negligence claims in the context of employees suing their former employers. (*See* Memorandum in Support of Motion to Dismiss counts 6, 7, 8, and 9 of Plaintiff's Complaint, Doc. 7). Yet, nowhere in Defendants' motion do they even sight a Kansas state court case, let alone one that prevented a negligence claim in the employment context.

In fact, Kansas courts have clearly allowed claims against an employer for the actions of its employees against "customers or co-workers…." *Schmidt v. HTG, Inc.*, 265 Kan. 372, 401, 961 P.2d 677, 695 (1998). With respect to negligent supervision and retention, the Kansas Supreme Court specifically allowed such a cause of action against an employer in *Kansas State Bank & Tr. Co. v. Specialized Transp. Servs., Inc.*, 249 Kan. 348, 362, 819 P.2d 587, 598 (1991). In *Kansas State Bank & Tr. Co.,* the plaintiff successfully asserted a negligent retention and supervision claim against a school district who hired a bus driver who allegedly molested a six-year-old girl. The court stated that:

> When a third party asserts a negligent retention and supervision claim against an employer, liability results not because of the employer-employee relationship, but because the employer had reason to believe that an undue risk of harm to others would exist as a result of the employment of the alleged tortfeasor. The employer is subject to liability only for such harm as is within that risk. If, therefore, the risk exists because of the quality of the employee, there is liability only to the extent that the harm is caused by the quality of the employee that the employer had reason to believe would be likely to cause harm. However, it is not necessary that the precise nature of the injury alleged by the third-party plaintiff would have been

>foreseen by the employer ...
>
>Whether risk of harm is reasonably foreseeable is a question to be determined by the trier of fact. Only when reasonable persons could arrive at but one conclusion may the court determine the question as a matter of law.

*Kansas State Bank & Tr. Co.,* 249 Kan. at 362, 819 P.2d 587. The court clearly suggested that negligent retention and supervision claims can be made in the employment context, as even admitted by the Defendants. *Id*. The Kansas Supreme Court has also recognized claims for negligent hiring. *See Plains Resources, Inc. v. Gable,* 235 Kan. 580, 682 P.2d 653 (1984).

Defendant's short citation of cases stand only for the unremarkable proposition that negligent hiring, training, and supervision cases are not recognized in cases in which an employee seeks to redress his or her wrongful termination. *See e.g. Naab v. Inland Container Corp.*, No. 93-1501-PFK, 1994 WL 70268, at *4 (D. Kan. Feb. 28, 1994) ("There is no case supporting such a claim of negligent supervision in the context of employment termination"). In *Naab*, a case describing this general rule, Judge Kelly dismissed a claim of negligent supervision of a supervisor in a case of employment termination, based primarily upon his conclusion that recognizing such a tort would circumvent and undermine the employment at will doctrine. In another District of Kansas case, *Dorner v. Polsinelli, White, Vardeman & Shalton,* 856 F.Supp. 1483, 1489–1491 (D.Kan.1994), relying in part on *Naab,* the court held that Kansas would not recognize the tort of negligent supervision in a case where the plaintiff/employee alleged that the defendant/employer failed to properly supervise its employees who miscalculated paychecks, treated female and males differently, and for retaliatory termination. The rational in both cases involved preventing a new cause of action against an employer for wrongful discharge where other adequate remedies already existed under Title VII or other federal statutes. In this case, Ms. Clark asserts no claim of wrongful termination.

So long as not attempting to circumvent the employment at-will doctrine by creating a new theory of liability against an employer, this Court has allowed claims against employers for negligence. *See e.g. Price v. Auto. Controls Corp.*, No. 90-1193-JTR, 1994 WL 542086, at *1 (D. Kan. Sept. 29, 1994) (a case where the court submitted plaintiff's negligent supervision and retention claims to the jury in a case brought by an employee against an employer.). For example, in *Bernard v. Doskocil Companies, Inc.,* 861 F.Supp. 1006 (D.Kan.1994), applying the test set forth in *Kansas State Bank & Tr. Co.,* which was addressed above, the court considered an employee's negligent retention claims against his employer. It was concluded however, **at the summary judgment phase**, that the plaintiff failed to present sufficient evidence to support a claim of negligent retention under Kansas law. *Id*. In *Bernard*, Plaintiff was allowed to conduct discovery and the case was not dismissed at the Rule 12(b) stage.

Similarly, in *Ulrich v. K–Mart Corp.,* 858 F.Supp. 1087 (D.Kan.1994), the plaintiff asserted negligent retention claims against her employer based upon its retention of a male co-worker who sexually harassed the plaintiff. Again, the court there applied the principles of *Kansas State Bank,* to evaluate the plaintiff's claim. *Id*.

Here, even in Ms. Clark's Complaint, she makes specific allegations against Defendant Newman that warrants discovery on a claim of negligence. Ms. Clark does not claim that Defendant Newman was merely negligent in allowing violations of federal statutes. She claims that Defendant Newman was negligent in preventing harm against her, specifically threats of harm against her by Defendant Trilli and a student athlete with a long history of harassment and conflict against Ms. Clark.

Simply put, there is no clearly established controlling principle of law that precludes Ms. Clark from asserting claims for negligent hiring, training, or supervision, let alone any law in a

15

Kansas state court preventing it. Ms. Clark has the right to conduct discovery on her claims as to a separate claim of negligence against Defendant Newman, apart from her federal employment claims. If the weight of Ms. Clark's evidence does not support an independent claim for negligence against Defendant, then at summary judgment, Defendant may assert an argument seeking judgment under Rule 56Dismissing Ms. Clark's claims at this stage would be premature.

## CONCLUSION

Ms. Clark has met her required threshold for stating a claim for the tort of outrage and negligent hiring, training, and supervision. For the reasons stated above, Defendants' motion should be denied.

Respectfully submitted,

/s/ Corey M. Adams
Corey M. Adams, #27253
Jennifer M. Hill, #21213
MCDONALD TINKER PA
300 W. Douglas, Ste. 500
Wichita, KS 67202
T:  316-263-5851
F:  316-263-4677
E:  cadams@mcdonaldtinker.com
    jhill@mcdonaldtinker.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 18, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following counsel of record:

Alan L. Rupe, KS # 08914
Jessica L. Skladzien, KS # 24178
LEWIS BRISBOIS BISGAARD & SMITH, LLP
1605 North Waterfront Parkway, Suite 150
Wichita, Kansas 67206
alan.rupe@lewisbrisbois.com
jessica.skladzien@lewisbrisbois.com
*Attorneys for Defendants*

/s/ Corey M. Adams
Corey M. Adams, #27253