# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

DESTINY CLARK,

        Plaintiff,

v.                                                                                               Case No. 19-1033-JWB

NEWMAN UNIVERSITY, INC. and
VICTOR TRILLI,

        Defendants.

## MEMORANDUM AND ORDER

This case comes before the court on Defendants' motion to dismiss counts 6, 7, 8, and 9 of Plaintiff's complaint (Doc. 6). The motion has been fully briefed and is ripe for decision. (Docs. 7, 16, 17.) Defendants' motion is GRANTED for the reasons stated herein.

**I.  Facts**

The following facts are taken from the allegations in Plaintiff's complaint.[1] Plaintiff Destiny Clark was employed by Defendant Newman University from May 2015 through June 2018 as the head volleyball coach. Plaintiff, an African-American female, was recruited by Defendant Victor Trilli, Newman's athletic director. During Plaintiff's interview with Trilli, Plaintiff expressed interest in another open position, that of the strength coach. Plaintiff had the appropriate certifications for this position and was seeking the position in addition to the volleyball position because of the pay increase. Trilli presented Plaintiff with a written offer of $37,000 for the volleyball position. Trilli also verbally offered Plaintiff the strength position at $20,000. Plaintiff accepted both offers. Plaintiff, however, was never presented with a written

---

[1] Because not all allegations are relevant to the motion to dismiss specific counts of the complaint, they are not included in this recitation.

offer for the strength position and, when she inquired about the status of her offer, was told by Trilli to focus on being a good volleyball coach.

In 2016, the NCAA began requiring schools to have a strength coach with certifications. Trilli informed all coaches that each coach would train their own athletes but just use Plaintiff's certification to meet the NCAA requirement. Plaintiff objected to Trilli and reminded him of the $20,000 offer for the position. Trilli laughed in Plaintiff's face and told her that he would only give her $2,000 for that. Newman then hired a lesser qualified male for the position at an annual salary of $20,000.

During her tenure at Newman, Plaintiff had to share facilities with other team sports. Plaintiff's team was placed at a lower priority than male teams. Plaintiff made complaints about these conflicts to Trilli. Trilli came into her office to talk about these conflicts. The discussions were "highly personal and upsetting." (Doc. 1 at 5.) The talks included questions about her dating life, if she was going to have children, and her hairstyle. Plaintiff asked a male friend to intervene and inform Trilli to stop having these conversations with Plaintiff. The conversations then stopped.

In meetings with the men's basketball coaching staff, Plaintiff was belittled and openly mocked. Trilli was present in the meetings and did not mediate the conflicts. Later, when Plaintiff reported a conflict or had an issue with scheduling, Plaintiff was told by Trilli to acquiesce to the demands of the men's basketball team.

On two separate occasions, Plaintiff had physical confrontations with a male athlete who was a basketball player (the "athlete") and worked as a janitor around the athletic department.[2] This athlete allegedly sexually harassed members of the volleyball team. Plaintiff complained

---

[2] Although Plaintiff alleges that there were two incidents, one on September 1, 2016, and the other on October 2, 2017, the complaint only details the allegations concerning the October 2017 incident.

about this athlete to Trilli over a two-year period. The athlete disrupted Plaintiff's practices and Plaintiff had to repeatedly ask him to leave the gym. Plaintiff also believed that the athlete stole volleyball equipment and she reported this theft to Trilli.

On October 2, 2017, the athlete was listening to loud music and Plaintiff told him that he needed to leave the gym so that her team could practice. The athlete screamed in Plaintiff's face and charged at her in a threatening manner. (Doc. 1 at 8.) Plaintiff immediately informed Trilli and asked him to ban the athlete from the game that was scheduled on the next day. Trilli did not take action. Plaintiff then informed security and the dean of students. The athlete was banned from the building where Plaintiff's office was located. Despite the ban, the athlete entered the building and used the coaches' copy room. On November 10, 2017, the dean of students warned the athlete about the violation of the ban. On November 20, 2017, Plaintiff obtained a temporary protection from abuse/protection from stalking ("PFS") order from Sedgwick County District Court. (Doc. 1 at 9.) The PFS order prohibited the athlete from contact with Plaintiff and the athletic department building. On December 7, 2017, another hearing was held. The athlete informed the court that he was finished with school in December and he was leaving the state. The court left the order in place until the athlete left Kansas. During the hearing, the athlete told the judge that Trilli had stated that Plaintiff was lying. Plaintiff alleges that Defendants did not take Plaintiff's concerns about the athlete seriously and also highlighted this athlete in a Newman magazine. (Doc. 1 at 11.)

In October 2017, Plaintiff filed a Title IX complaint listing concerns about the athlete's conduct and the failure of the basketball staff to control the athlete. Plaintiff also asserted unequal access to the practice facilities. The complaint was investigated by Mandy Greenfield, the head of Human Resources, and John Walker, a Title IX officer for Newman. During the

investigation, Walker told Plaintiff that she should work from home after "multiple situations that left Ms. Clark concerned for her safety." (Doc. 1 at 13.) Newman fired Greenfield and Walker prior to the completion of the investigation because Newman anticipated "a finding of unlawful discrimination." (Doc. 1 at 13.) Levi Esses, Plaintiff's assigned supervisor during the investigation, filed a Title IX complaint against Newman for retaliation by Trilli.

Newman then hired the Lewis Brisbois law firm to start the investigation over. From November 10, 2017, through January 17, 2018, Plaintiff repeatedly requested that she return to campus and coach her team, but her request was denied. Plaintiff returned on January 22, 2018. Trilli refused to speak to Plaintiff for many weeks. After mediation sessions, Trilli agreed that he would provide Plaintiff with a positive reference.

Plaintiff filed this complaint against Defendants on February 14, 2019, after receiving her right to sue letter from the EEOC. Plaintiff alleges the following claims: Title IX retaliation; violation of the Equal Pay Act; Title VII retaliation; hostile work environment; gender discrimination; intentional infliction of emotional distress; negligent hiring/retention; negligent training/failure to train; and negligent supervision. (Doc. 1.) Defendants move to dismiss Plaintiff's claim of intentional infliction of emotional distress and her three negligence claims.

## II. Motion to Dismiss Standards

In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)). All well-pleaded facts and the reasonable inferences derived from those facts are viewed in the light most favorable to Plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008). Conclusory allegations, however, have no bearing upon the

court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007). Plaintiff must "allege enough factual allegations in the complaint to set forth a plausible claim." *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1172 (10th Cir. 2015) (internal citations omitted). In the end, the issue is not whether Plaintiff will ultimately prevail, but whether Plaintiff is entitled to offer evidence to support her claims. *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005).

### III. Analysis

#### a. Intentional Infliction of Emotional Distress

Defendant Trilli contends that Plaintiff's complaint fails to support a plausible claim of intentional infliction of emotional distress (or outrage). A claim for outrage under Kansas law requires proof of four elements: (1) Defendant's conduct was "intentional or in reckless disregard" of Plaintiff; (2) "the conduct was extreme and outrageous;" (3) a causal connection between Defendant's conduct and Plaintiff's mental distress; and (4) Plaintiff's "mental distress was extreme and severe." *Valadez v. Emmis Commc'ns*, 290 Kan. 472, 476, 229 P.3d 389 (2010). There are two threshold requirements that must be met: (1) whether "[D]efendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery," and (2) whether "the emotional distress suffered by Plaintiff is in such extreme degree the law must intervene because the distress inflicted is so severe that no reasonable person should be expected to endure it." *Id.* at 477.

Trilli argues that Plaintiff's allegations cannot meet either requirement. Because the court finds that Plaintiff's allegations are insufficient to show that her emotional distress is extreme, the court does not need to address whether the conduct was extreme and outrageous. *See Balmer Fund, Inc. v. City of Harper*, 294 F. Supp. 3d 1136, 1151–52 (D. Kan. 2018). To

recover for the tort of outrage, the emotional distress must be "extreme or severe." *Valadez*, 290 Kan. at 478. While "no laundry list of what qualifies as the requisite level of severity" exists, "headaches, sleeplessness, irritability, anxiety, depression, listlessness, lethargy, intermittent nightmares, and the like would probably not suffice." *Id.* at 479 (citing Boston, Kline, & Brown, *Emotional Injuries: Law and Practice* § 22:7 (1998))

Trilli argues that Plaintiff's complaint fails to state a claim as Plaintiff has merely alleged that she suffered extreme emotional distress. (Doc. 7 at 4.) Plaintiff's allegations in her complaint concerning the emotional distress caused by Trilli[3] state that she "suffered extreme and severe emotional distress due to the conduct of Defendant Trilli." (Doc. 1 at 29.) These allegations are entirely conclusory and are not supported by facts that would support a finding that Plaintiff has stated a claim. *See Balmer Fund, Inc.*, 294 F. Supp.3d at 1152. Although this argument was raised by Trilli, Plaintiff's response wholly fails to address how her complaint satisfies her burden to allege facts regarding severe emotional distress.

Because Plaintiff has not sufficiently alleged that she suffered extreme emotional distress, Trilli's motion to dismiss Plaintiff's claim of intentional infliction of emotional distress is granted.

### b. Negligent Hiring, Retention, and Training Claims

Newman moves for dismissal of the negligent hiring, retention, and training claims on the basis that these claims are not recognized under Kansas law. A review of the allegations regarding these claims is necessary. In her complaint, Plaintiff alleges that Newman was

---

[3] Plaintiff's complaint also includes allegations regarding emotional distress caused by Newman. (Doc. 1 at 21, 26.) ("As a direct and proximate result of the Defendant Newman's wrongful conduct, Plaintiff has suffered and continues to suffer great pain of mind and body, shock, emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, loss of enjoyment of life, and attorney's fees and costs.") The allegations do not support an inference that Trilli's conduct caused the distress alleged in these paragraphs.

negligent in hiring and retaining Trilli because he created a hostile work environment for female coaches and caused Plaintiff extreme emotional distress. (Doc. 1 at 30.) In count 8, Plaintiff alleges that Trilli had established a sexually hostile environment and outrageously hostile environment. Plaintiff alleges that Newman knew about this conduct and hostile environment and did not attempt to correct the conduct and failed to train Trilli. Finally, Plaintiff alleges that Newman should have known that Trilli required extra supervision around female subordinates because Plaintiff had previously notified Newman about his actions. Plaintiff also alleges Newman should have known that Trilli would harm female workers and create a racially hostile environment. (Doc. 1 at 33.) As discussed previously, Plaintiff also has asserted several statutory employment claims against Newman, including retaliation, hostile work environment, and gender discrimination.

Newman contends that Plaintiff's negligence claims are not actionable under Kansas law, citing several cases in this district. Kansas has recognized tort claims by third parties against employers for negligent retention, supervision, and hiring. *Farris v. Bd. of Cty. Comm'rs of Wyandotte Cty., Kan.,* 924 F. Supp. 1041, 1051 (D. Kan. 1996) (citing *Plains Resources, Inc. v. Gable*, 235 Kan. 580, 682 P.2d 653 (1984) (negligent hiring and retention)); *Kansas State Bank & Trust Co. v. Specialized Transp. Servs., Inc.*, 249 Kan. 348, 819 P.2d 587 (1991) (negligent supervision). This court has consistently and recently held, however, that Kansas would not recognize such a claim brought by an employee due to the conduct of another employee. *Id.*; *Forbes v. Kinder Morgan, Inc.*, 172 F. Supp. 3d 1182, 1201–02 (D. Kan. 2016), *aff'd*, 686 F. App'x 552 (10th Cir. 2017) ("Kansas has not and would not recognize the torts ... in th[at] factual context."); *Topolski v. Chris Leef Gen. Agency Inc.*, 2012 WL 984278, at *3–4 (D. Kan. Mar. 22,

2012); *Greer v. Sw. Bell Tel. Co.*, No. 18-1312-EFM, 2019 WL 2646662, at *2 (D. Kan. June 27, 2019).

Plaintiff argues that Kansas courts support such an action, however. Plaintiff first cites to *Kansas State Bank & Trust Co.*, *supra*, for the proposition that the Kansas Supreme Court "specifically allowed such a cause of action against an employer." (Doc. 16 at 13.) As Plaintiff acknowledges, however, that case was brought on behalf of a six-year old child who was molested by a bus driver. The Kansas Supreme Court did not discuss the viability of negligent hiring, retention, and training claims brought by an employee due to another employee's discriminatory conduct. Plaintiff also cites to language in *Schmidt v. HTG, Inc.*, 265 Kan. 372, 401, 961 P.2d 677, 695 (1998). In that case, a former employee had been raped and killed by a former coworker, who was still employed by the defendant, at a location that was not connected to the employer defendant. Suit was brought by the parents of the deceased. The Kansas Supreme Court held that the employer was not liable under a theory of negligent hiring or retention because the employer had no duty when the injury occurred at a location that is "removed from the employer's premises" and the employee "was not acting in the course of employment." *Id.* at 401-02. Plaintiff points to the court's language regarding its prior cases in which the court stated that "[i]n each of the Kansas cases upon which liability of the employer was predicated, the existence of a duty to the injured party was based on **actions against a customer or co-worker** which took place on the working premises during the time employment services were normally rendered." *Id.* at 401 (emphasis supplied.) The court, however, did not cite to specific cases. A review of the *Schmidt* opinion shows that there were three cases cited regarding co-workers. None of those cases concerned harassment or discrimination. Rather, they all dealt with physical altercations. Notably, the court also determined that the employer

was not liable as the acts were outside of the scope of the employee's duties. *See Balin v. Lysle Rishel Post No. 68*, 177 Kan. 520, Syl. ¶ 4, 280 P.2d 623 (1955) (injury due to discharge of a firearm and the act was not part of employee's duties); *Zamora v. Wilson & Co.*, 129 Kan. 285, 282 Pac. 719 (1929) (finding no claim when co-worker murdered another employee and therefore act not part of duties); *Gabbard v. Sharp*, 167 Kan. 354, 205 P.2d 960 (1949) (assault by intoxicated employee was outside scope of employment).

Those cases do not lend support for a cause of action in this matter. None of the cases discussed in the *Schmidt* case support the proposition that Kansas would recognize a claim of negligent retention, training, or hiring, on facts that are premised on employment discrimination. Plaintiff argues that the cases in this district have limited their holdings to foreclose these types of claims in employment cases only when the allegations involved employment termination. (Doc. 16 at 14.) Plaintiff states that the rationale in two cases, *Naab v. Inland Container Corp.*, No. 93-1501-PFK, 1994 WL 70268, at *4 (D. Kan. Feb. 28, 1994) and *Dorner v. Polsinelli, White, Vardeman & Shalton*, 856 F. Supp. 1483, 1489–1491 (D. Kan. 1994), involved "preventing a new cause of action against an employer for wrongful discharge where other adequate remedies already existed under Title VII or other federal statutes. In this case, Ms. Clark asserts no claim of wrongful termination." (Doc. 16 at 14.) Plaintiff, however, does not acknowledge that her own allegations are premised on her claims raised in the complaint under Title VII and Title IX. As discussed previously, Plaintiff's negligence claims specifically state that Newman was negligent because it allowed Trilli to continue to subject Plaintiff to a sexually hostile work environment, retaliate against her for filing claims, and discriminate against her because of her gender. All of these claims have federal remedies. Moreover, Plaintiff has not offered any argument as to why the authority cited by Newman does not foreclose her claims.

This court has held that Kansas "would not recognize an independent tort claim for negligent supervision or retention in the ordinary employment discrimination case." *Zhu v. Fed. Hous. Fin. Bd.*, No. 04-2539-KHV, 2006 WL 626044, at *6 (D. Kan. Mar. 13, 2006) (citing *Ellis v. Osco Drug. Inc.*, No. 95–1101, 1996 WL 432382, at *3 (D. Kan. July 8, 1996)); *see also Day v. Excel Corp.*, No. 94–1439, 1996 WL 294341, at *14 (D. Kan. May 17, 1996)).

In another case, Judge Vratil explained as follows:

> While the Kansas Supreme Court has not squarely addressed the issue, this Court has repeatedly held that a claim for negligent hiring, supervision or retention is not available in cases such as this. The gist of this action is employment discrimination based on race. Plaintiff seeks relief under Title VII and the KAAD, which afford adequate remedies for the conduct in question.

*Hunter v. Duckwall-Alco Stores, Inc.*, No. CIV. A. 00-2476-KHV, 2001 WL 533198, at *3 (D. Kan. Apr. 3, 2001). This court has also precluded such claims in the context of sexual harassment. *See Fiscus v. Triumph Grp. Operations, Inc.*, 24 F. Supp. 2d 1229, 1242–43 (D. Kan. 1998) (discussing cases). The Tenth Circuit has also stated that it is unlikely that Kansas courts would allow the tort of negligent supervision in the context of discrimination. *See Polson v. Davis*, 895 F.2d 705, 710 (10th Cir. 1990) ("We also observe that this cause of action, once recognized, would necessarily arise any time a middle level supervisor engaged in discriminatory conduct. We think it unlikely that the Kansas courts would adopt a liability rule with such broad implications.")

Viewing the allegations in a light most favorable to Plaintiff, Plaintiff's negligence claims are based on the same facts that support Plaintiff's statutory employment discrimination claims. Moreover, they are brought against an employer based on another employee's conduct. Kansas law does not provide a cause of action for negligent hiring, supervision, or retention under these facts.

### c. Defendant Trilli

Trilli also seeks dismissal from this action on the basis that Plaintiff's outrage claim was the sole claim alleged against him in his individual capacity and that he should be dismissed upon dismissal of that claim. (Doc. 7 at 6.) Plaintiff does not respond to Trilli's argument. Reviewing the complaint, both counts 1 and 2 fail to indicate in the title of the counts whether they are made solely against Newman, or also against Trilli. However, the allegations in those particular counts clarify that the claims are made solely against Newman. (*See* Doc. 1 at 22, 24 "As a direct and proximate result of the Defendant Newman's wrongful conduct, Plaintiff has sustained or will sustain damages for lost pay and benefits in an amount commensurate with her compensation at Newman;" "Defendant Newman violated the Equal Pay Act by offering Ms. Clark a substantially less salary as was offered to a male to work in the exact same position.") Counts 3, 4, and 5, clearly indicate in the title that they are against Newman. Counts 6, 7, 8, and 9 have been dismissed.

Therefore, as there are no remaining claims stated against Trilli, he is dismissed from this action.

### IV. Conclusion

Defendants' motion to dismiss (Doc. 6) is GRANTED. Counts 6, 7, 8, and 9 are dismissed. Defendant Trilli is dismissed from this action.

IT IS SO ORDERED this 3rd day of January, 2020.

\_\_\_\_s/ John W. Broomes_____  
JOHN W. BROOMES  
UNITED STATES DISTRICT JUDGE