# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DESTINY CLARK,  ) | |
| )  | |
| Plaintiff,  ) | |
| )  | |
| v.  ) | Case No.  19-1033-JWB-GEB |
| )  | |
| NEWMAN UNIVERSITY, INC., et al.,[1]  ) | |
| )  | |
| Defendants.  ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Plaintiff's Motion to Disqualify the law firm of

Lewis Brisbois Bisgaard & Smith, LLP, from representing Defendants in this case. (**ECF

No. 18**).  On December 2, 2019, the Court conducted a hearing on Plaintiff's motion.

Plaintiff Destiny Clark appeared through counsel, Jennifer M. Hill.  Defendant Newman

University, Inc. and former defendant Victor Trilli appeared through counsel, Alan L.

Rupe.  After consideration of Plaintiff's motion and memorandum in support (ECF Nos.

18, 19), Defendants' Memorandum in Opposition (ECF No. 29), and Plaintiff's Reply

(ECF No. 31), and hearing additional argument from counsel, the Court announced its

oral ruling at the conclusion of the hearing. Plaintiff's Motion to Disqualify was

**GRANTED in part** as to attorneys Jeremy K. Schrag, Christina M. Guerin, and Laura J.

Anson and **DENIED without prejudice** as to attorney Alan L. Rupe.   This written

---

[1] Plaintiff Destiny Clark originally filed her Complaint against Newman University, Inc. and
Victor Trilli.  At the time the hearing was held on the Motion to Disqualify and the Court
announced its ruling, both Defendants remained pending in this matter.  On January 3, 2020, Mr.
Trilli was dismissed from the case (Mem. and Order, ECF No. 65).   Any reference to
"Defendant" or "Defendants" in this opinion refers to Newman University.

opinion memorializes that ruling.[2]

## I.     Factual Background[3]

The parties' factual statements are not in complete agreement. Where one party submits a declaration or affidavit in support of its factual statement and the opposing party offers no opposing declaration, the Court accepts such facts as true for purposes of this motion. At the time of the filing of the motion to disqualify, Defendants had not yet filed an answer, because they filed a Motion to Dismiss, which was recently decided (*see* Motion, ECF No. 6; Mem. and Order, ECF No. 65). Therefore, the Court accepts as true the factual allegations of the Complaint (ECF No. 1) for purposes of this motion.

Plaintiff Destiny Clark worked for defendant Newman University ("Newman") from May 2015 through June 2018. She was hired by the athletic director, and former defendant Victor Trilli, as head volleyball coach. Plaintiff claimed she was treated differently than male coaches, her volleyball team had inadequate facilities, and they did not receive equal treatment regarding practice times at the gym. Additionally, Plaintiff had issues with a male student athlete who was disruptive to practices and confrontational with her. She claimed the men's basketball coaches and Trilli, as athletic director, failed to protect her by taking appropriate disciplinary action against the student-athlete.

On October 4, 2017, Plaintiff submitted a written summary of complaints to

---

[2] Recording of motion hearing (December 2, 2019, tape no. 10:04-11:03). The hearing was recorded, but not transcribed. If any party wishes to purchase a written transcription, it may contact the chambers of the undersigned for more information.

[3] Unless otherwise indicated, the information recited in this section is taken from the Complaint (ECF No. 1) and from the briefing surrounding the motion to disqualify (ECF Nos. 18, 19, 29, and 31).

Newman's Title IX Coordinator, Case Bell. The next day, Newman purportedly opened an investigation. Bell appointed John Walker and Lisa DeLoach, Newman Title IX officers, to initiate the investigation. Six days later, on October 10, 2017, Newman's Director of Human Resources, Mandy Greenfield, took over the investigation from Bell due to the presence of employees on both the complaining and responding sides. On October 18, 2017, at the direction of Ms. Greenfield, Plaintiff converted her written summary of complaints to a formal Title IX complaint, which she filed. In mid-November 2017, Plaintiff was advised to work from home.

Prior to the investigation's conclusion, on November 30, 2017, Newman retained the law firm of Lewis Brisbois Bisgaard & Smith, LLP ("Lewis Brisbois") to complete the Title IX investigation into Plaintiff's complaint. Lewis Brisbois attorneys Jeremy Schrag, Christina Guerin, and Laura Anson conducted the investigation. Lewis Brisbois attorney and managing partner Alan Rupe was not a member of the Title IX investigation team. The parties have different interpretations of the necessity of the change in investigation strategy: Plaintiff believes the internal investigators were preparing findings of discrimination when Ms. Greenfield and Mr. Walker were terminated and replaced by Lewis Brisbois, while Defendants contend the internal investigators were terminated for improper behavior, and the law firm was hired to complete the investigation properly.

On December 3, 2017, Mr. Schrag sent an email to Plaintiff indicating Newman retained the Lewis Brisbois firm to "take over pending Title IX investigations in which [Plaintiff is] involved" and would be conducting a "thorough, timely, and independent

investigation into all allegations." (ECF No. 19-1 at 1.) The email was directed to Plaintiff, and both Mr. Rupe and Ms. Anson were copied on the email. At some point shortly after Plaintiff received the first email from Mr. Schrag, she retained Jennifer Hill as her attorney.[4]

Between December 8 and December 27, 2017, multiple emails were exchanged between Jennifer Hill, Plaintiff's attorney, and Mr. Schrag, attempting to schedule Plaintiff's interview. Of the several emails exchanged, two copy Mr. Rupe: one dated December 27, 2017, scheduling the interview time, and one on December 29, 2017, giving details of the interview and asking Plaintiff to bring relevant documents. (ECF No. 31, Ex. E.)

Multiple Title IX investigations were being conducted during roughly the same time period. To understand the scope of the investigations, the Lewis Brisbois investigators interviewed Newman personnel. On January 3, 2018, both Mr. Rupe and Mr. Schrag interviewed Kelly McCarthy, a former IT employee of Newman, regarding an unspecified Title IX investigation. Ms. McCarthy's interview was not mentioned in the Title IX Investigative Report into Plaintiff's complaint. On January 4, 2018, Mr. Schrag interviewed Mandy Greenfield, the former Newman HR Director, and Mr. Rupe was present for approximately two hours of the three-hour interview. Ms. Greenfield's attorney was also present at the interview. Although the Report mentions the investigators "met with Greenfield on two separate occasions," the content of both

---

[4] Recording of motion hearing (December 2, 2019, tape no. 10:04-11:03). The hearing was recorded, but not transcribed. If any party wishes to purchase a written transcription, it may contact the chambers of the undersigned for more information.

interviews is not specified. (Report, ECF No. 29-1.)

Mr. Rupe contends any role he played in the investigation was as Newman's counsel. Mr. Rupe did not prepare any of the investigative reports and was not present for any of the interviews conducted specifically regarding Plaintiff's Title IX complaint. Mr. Rupe did not attend or participate in the interviews of Victor Trilli, R.J. Allen, Jamahl DePriest, Levi Esses, and a member of the women's cheer squad, which were conducted as part of the investigation into Plaintiff's Title IX complaint. Although other Title IX investigations were occurring at the same time, those investigations regarded complaints not made by Plaintiff. Mr. Rupe did not prepare any of the investigative reports.

On January 16, 2018, the Lewis Brisbois firm presented its report to the Newman Executive Committee. The Report was signed by Mr. Schrag, Ms. Guerin, and Ms. Anson, and was not addressed to, signed by, nor mentions Mr. Rupe. The Report found no violations of the anti-discrimination or Title IX policies but found "conditions exist at the University" which would impact the ability of Newman to ensure a discrimination-free environment "in the future." (Report, ECF No. 29-1.) The investigators recommended corrective actions, in the form of counseling, training, and changes to Newman's policies and procedures. Mr. Rupe received the Title IX report simultaneous with Newman's Executive Committee.

Between January 16-17, 2018, Plaintiff's counsel and Mr. Schrag exchanged emails regarding the conclusion of the Title IX investigation and Plaintiff's return to campus. Mr. Rupe was copied on these emails. Other emails dated January 16 through

January 22, 2018 between Mr. Schrag and Plaintiff's counsel (some of which are duplicates) discuss the issue of Plaintiff's supervisor when she returns to work. Mr. Rupe is also copied on those emails.

Clark describes her remaining employment with Newman as containing open and continuous retaliation against her for informally and formally lodging complaints against Newman and Trilli. Clark's employment at Newman ended with her resignation on July 16, 2018. Prior to concluding her employment Plaintiff filed a charge with the Equal Employment Opportunity Commission, and later amended her charge after leaving Newman.

## II.     Procedural Background

Plaintiff then filed this lawsuit in February 2019 against both Newman and Trilli, claiming Title IX Retaliation (Count 1), violations of the Equal Pay Act (Count 2); Title VII Retaliation (Count 3); Title IV hostile work environment (Count 4); Title VII gender discrimination (Count 5); intentional infliction of emotional distress (Count 6); negligent hiring/retention (Count 7); negligent training/failure to train (Count 8); and negligent supervision (Count 9). Recently, District Judge John W. Broomes granted Defendants' motion to dismiss Counts 6-9, and Trilli was dismissed from the case. (ECF No. 65.)

The undersigned held a scheduling conference in June 2019. (ECF Nos. 26, 28.) Currently, the litigation is progressing through discovery. After modifications to the Scheduling Order, discovery is set to close on April 17, 2020 with a pretrial conference set for May 13, 2020. A jury trial has not yet been scheduled. (Revised Scheduling Order, ECF No. 61.)

At the time of the initial scheduling conference, Plaintiff filed her motion to disqualify defense counsel (ECF No. 18), but Defendants had not yet responded. After the motion to disqualify ripened, the parties filed a notice of pending mediation to occur on September 23, 2019. (ECF No. 33.) In light of the scheduled mediation, the Court postponed consideration of the motion. After counsel requested a conference and informed the Court they wished to postpone mediation, the Court set the disqualification motion for oral argument. (Order, ECF No. 42.) This order memorializes rulings made during that hearing.

## III.  Summary of the Parties' Legal Arguments

### A.  Plaintiff's Position (Motion, ECF No. 18, and Reply, ECF No. 31)

Plaintiff asks the Court to disqualify the firm of Lewis Brisbois, or in the alternative, Mr. Rupe, Mr. Schrag, Ms. Guerin, and Ms. Anson, from representing either Defendant. She makes arguments under three primary ethical rules: Kansas Rule of Professional Conduct ("KRPC") 3.7 (along with the "unsworn witness" issue); KRPC 4.3, and KRPC 1.12.

Under KRPC 3.7, Plaintiff argues all the individual attorneys are "necessary witnesses." She also claims the attorneys should be disqualified as not only necessary fact witnesses, but as "unsworn witnesses." She maintains, under KRPC 3.7, permitting anyone from Lewis Brisbois to act as trial counsel would be confusing to the jury.

Plaintiff also argues, under KRPC 4.3, all Lewis Brisbois counsel had an obligation as disinterested counsel to inform her the firm was also representing Newman. Because they allowed her to believe they were independent, they should be disqualified.

Finally, under KRPC 1.12 and definitions found in KRPC 2.3(a), Plaintiff contends because Lewis Brisbois attorneys acted as independent investigators, they were "third-party neutrals" and cannot now represent Newman in this litigation. She argues while acting as neutral parties, the attorneys elicited confidential information from her, without informing her they were acting in Newman's interests.

**B.      Defendants' Position (Resp., ECF No. 29)**

First, Defendants argue the factors analyzed under KRPC 3.7 have not been met. They contend Plaintiff has not met her burden to show Mr. Rupe has evidence material to the determination of the issues being litigated; any evidence Mr. Rupe would have could be obtained elsewhere; and Plaintiff has not established any evidence Mr. Rupe could provide would be prejudicial to Newman. Additionally, Defendants argue disqualification would work a substantial hardship on Defendants.

Second, Defendants contend Mr. Rupe cannot be an "unsworn witness" because he was not a participant in the investigation of Clark's complaint. He did not prepare the report and did not take place in any interview related to Plaintiff's specific complaint. Therefore, Mr. Rupe does not possess information he could subtly impart to the jury. And, an entire law firm cannot be an "unsworn witness", because even KRPC 3.7 acknowledges a lawyer may act as an advocate in a trial in which a lawyer in the same firm is likely to be called as a witness. Defendants suggest disqualification is extreme, and there are other ways to determine whether Mr. Rupe has such information—perhaps through deposition or other coordination by the parties to determine whether he has first-hand knowledge. (ECF No. 29 at 12.)

Third, under KRPC 4.3, Defendants argue Mr. Schrag made it clear to Plaintiff he was performing an investigation on behalf of Newman, and there was no reason for counsel to know Plaintiff would not understand the investigators were retained by Newman. Defendants maintain even if Mr. Schrag were required to correct any misunderstanding held by Plaintiff, it would not justify disqualification of the entire firm. (ECF No. 29 at 14.)

And finally, under KRPC 1.12, Defendants argue Plaintiff cites no authority requiring disqualification under these facts. They contend Mr. Rupe was not an investigator, and the investigation did not transform any of the attorneys into third-party neutrals. They claim the law firm was not hired to assist Plaintiff and Newman in reaching resolution of any dispute between the two—which is the definition of "third party neutral" under KRPC 2.3. The Title IX Investigators prepared their report to advise Newman, who was their client. (ECF No. 29 at 16.) And, Plaintiff retained counsel for the investigation process, so this shows she knew Lewis Brisbois was not truly "independent."

Overall, Defendants contend only Mr. Schrag, Ms. Guerin, and Ms. Anson were involved in the Title IX investigation, and they do not represent Newman in this case. Any involvement Mr. Rupe may have had was tangential and only as Newman's retained counsel. Defendants argue Plaintiff has not provided sufficient evidence to meet her burden on her motion to disqualify: she submitted no declaration of her own, she did not request an evidentiary hearing or a deposition. Defendants also argue if the Court were to find Mr. Rupe or the firm disqualified under the above rules, Newman reserves the right

to waive any alleged conflict.

## IV. Legal Standards

### A. Disqualification Generally

The Court reviews disqualification by examining two primary sources.[5] "First, attorneys are bound by the local rules of the court in which they appear . . . . Second, because motions to disqualify counsel in federal proceedings are substantive motions affecting the rights of the parties, they are decided by applying standards developed under federal law."[6]

The District of Kansas has adopted the Kansas Rules of Professional Conduct (KRPC) as the "applicable standards of professional conduct" for lawyers appearing in this Court.[7] The Court has the power to disqualify counsel at its discretion based upon these professional standards of ethics.[8]

A motion to disqualify must be decided on the unique facts of the case, and the Court must carefully balance the interest in protecting the integrity of the judicial process against the right of a party to have the counsel of its choice.[9] As a part of this balancing process, the Court considers: 1) the privacy of the attorney-client relationship; 2) the prerogative of each party to choose its own counsel; and 3) the hardships disqualification

---

[5] *Greenfield v. Newman Univ., Inc.*, No. 18-2655-DDC-TJJ, 2019 WL 2250143, at *3 (D. Kan. May 24, 2019) (citing *United States v. Stiger*, 413 F.3d 1185, 1195 (10th Cir. 2005)).
[6] *Id.* (citing *Stiger*, 413 F.3d at 1195 (quoting *Cole v. Ruidoso Mun. Schs.*, 43 F.3d 1373, 1383 (10th Cir. 1994))).
[7] D. Kan. Rule 83.6.1(a).
[8] *Greenfield*, 2019 WL 2250143, at *3 (citing *E.E.O.C. v. Orson H. Gygi Co., Inc.*, 749 F.2d 620, 621 (10th Cir. 1984); *Biocore Med. Techs., Inc. v. Khosrowshahi*, 181 F.R.D. 660, 664 (D. Kan. 1998)).
[9] *Darnell v. Merch.*, No. 17-3063-EFM-TJJ, 2017 WL 2618823, at *2 (D. Kan. June 16, 2017).

would impose upon the parties and the entire judicial process.[10]

"The burden in a motion to disqualify is on the moving party."[11] This standard requires the moving party (the party opposing representation) "to bear a higher burden on a disqualification motion, permits the court to delay ruling until it can be determined that no other witness could testify, and obviates disqualification if the lawyer's testimony is merely cumulative."[12] Proof offered by the movant "must be more than mere speculation and must sustain a reasonable inference of a violation."[13]

"The right to counsel of choice is an important one subject to override for compelling reasons. Even so, this right is secondary in importance to preserving the integrity of the judicial process, maintaining the public confidence in the legal system and enforcing the ethical standards of professional conduct."[14] "A motion to disqualify counsel deserves serious, conscientious, and conservative treatment."[15]

---

[10] *Layne Christensen Co. v. Purolite Co.*, No. 09-2381-JWL-GLR, 2011 WL 1113543, at *5 (D. Kan. Mar. 24, 2011).

[11] *LeaseAmerica Corp.*, 19 Kan. App. 2d 740, 750 (1994) (citing *Field v. Freedman*, 527 F. Supp. 935, 941 (D. Kan. 1981)). *See also United States v. Oyer*, No. 08-2002-CM, 2009 WL 1904308, at *1 (D. Kan. July 1, 2009) (discussing KRPC 3.7); *see also Koch v. Koch Indus.*, 798 F. Supp. 1525, 1530–31 (D. Kan. 1992) (citing *F.D.I.C. v. Sierra Resources, Inc.,* 682 F. Supp. 1167, 1170 (D. Colo. 1987); *Field,* 527 F. Supp. at 941). In *Koch*, the Court explains the different standard applied in *Parker v. Volkswagenwerk Aktiengesellschaft,* 245 Kan. 580, 781 P.2d 1099 (1989). In *Parker,* that standard was limited to the situation under KRPC 1.10(b) where an attorney becomes associated with a new firm, creating a conflict of interest. In that circumstance, the burden shifts to the new firm to prove that the lawyer in question did not actually have relevant knowledge. *Koch,* 798 F. Supp. at 1530–31 (citing *Parker,* 245 Kan. at 587; citing Geoffrey C. Hazard, Jr. & W. William Hodes, *The Law of Lawyering,* § 1.10:209 (1990)).

[12] *LeaseAmerica Corp.*, 19 Kan. App. 2d at 751 (citing ABA/BNA Lawyers' Manual on Professional Conduct § 61:507).

[13] *Koch*, 798 F. Supp. at 1530–31.

[14] *Greenfield*, 2019 WL 2250143, at *3 (quoting *Koch*, 798 F. Supp. at 1530 n.2).

[15] *Layne Christensen Co.,* 2011 WL 1113543, at *5 (citing *Koch,* 798 F. Supp. at 1530).

## B.     KRPC 3.7:  The Advocate-Witness ("necessary witness") Rule

Plaintiff first relies upon Kansas Rule of Professional Conduct 3.7 to seek disqualification.  This rule provides:

> (a) A lawyer shall not act as an advocate at a trial in which the lawyer is likely to be a necessary witness except where:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.
> (b) A lawyer may act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 or Rule 1.9.

"One of the strongest rationales for this lawyer-witness rule is to prevent jury confusion over the separate roles of an advocate and a witness."[16]  Courts have found that "combining the roles of advocate and witness has the potential to prejudice the opposing party because a jury may be unclear whether an attorney asked to testify is making a statement that should be taken as proof or as an analysis of the proof."[17]

When analyzing a potential disqualification under KRPC 3.7, courts in this District use the "*Smithson* test."[18]  Under this test, disqualification should not be ordered unless: (1) the attorney would give evidence material to the issue being litigated, (2) such evidence is unobtainable from other sources, and (3) the testimony is prejudicial or

---

[16] *Greenfield,* 2019 WL 2250143, at *4 (citing *Schneider v. Citimortgage, Inc.*, No. 13-4094-SAC, 2014 WL 6632939, at *2 (D. Kan. Nov. 21, 2014); *Lowe v. Experian*, 328 F. Supp. 2d 1122, 1126 (D. Kan. 2004)).

[17] *Id*. (citing *Chapman Eng'rs, Inc. v. Natural Gas Sales Co.*, 766 F. Supp. 949, 957 (D. Kan. 1991) (explaining rationale for Model Rule of Professional Conduct 3.7(a) upon which the KRPC 3.7(a) is based)).

[18] *Id*. (citing *Schneider*, 2014 WL 6632939, at *2 (citing *LeaseAmerica Corp.*, 19 Kan. App. 2d at 751 (adopting *Smithson* factors)).

potentially prejudicial to the testifying attorney's client.[19]   All three *Smithson* factors must be present in order for an attorney to be disqualified.[20]

As interpreted by courts in this District, KRPC 3.7(a) "requires the opposing party to bear a higher burden on a disqualification motion, permits the court to delay ruling until it can be determined that no other witness could testify and obviates disqualification if the lawyer's testimony is merely cumulative."[21]

### C.  Unsworn Witness

Although Plaintiff includes the "unsworn witness" theory in her KRPC 3.7 analysis, her "unsworn witness" argument must be analyzed separately.  As the Tenth Circuit notes, the "*unsworn* witness" theory is separate from the *Smithson* test used in the "*necessary* witness" analysis of Rule 3.7.[22]  An unsworn witness is:

> an attorney whose 'relationship to his client results in his having first-hand knowledge of the events presented at trial,' enabling the attorney to 'subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination.'[23]

An "unsworn witness" issue arises when "an attorney was a participant in events to be explored at trial."[24]

> Even if the attorney is not called [as a witness], he can still be disqualified, since his performance as an advocate can be impaired by his relationship to the events in question. For example, the attorney may be constrained from making certain arguments on behalf of his client because of his own involvement, or may be tempted to minimize his own conduct at the

---

[19] *Id*. (citing *Schneider*, 2014 WL 6632939, at *2 (citing *Smithson v. U.S. Fid. & Guar. Co.*, 411 S.E.2d 850, 856 (W. Va. 1991)).
[20] *Id*. (citing *Smithson*, 411 S.E.2d at 856) (emphasis added).
[21] *Darnell*, 2017 WL 2618823, at *3.
[22] *U.S. v. Evanson*, 584 F. 3d 904, 909 (10th Cir. 2009) (emphasis added).
[23] *Id*. at 910 (citing *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993)).
[24] *Id.* at 909.

expense of his client. Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination.[25]

An attorney acting as an unsworn witness has no conflict of interest; he is "not at odds with his client."[26] Instead, "the detriment is to the [party seeking disqualification] since the [party opposing disqualification] gains an unfair advantage, and to the court, since the factfinding process is impaired."[27]

### D.     KRPC 4.3: Dealing with Unrepresented Persons

The next rule relied upon by Plaintiff is KRPC 4.3. This rule guides attorneys on how to interact with a person who does not have counsel. The rule states:

> In dealing on behalf of a client with a person *who is not represented by counsel*, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the *unrepresented* person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding.

KRPC 4.3 (emphasis added). This rule protects unrepresented persons, because such persons, especially those "not experienced in dealing with legal matters, might assume that a lawyer is disinterested in loyalties or is a disinterested authority on the law even when the lawyer represents a client. In order to avoid a misunderstanding, a lawyer will typically need to identify the lawyer's client and, where necessary, explain that the client has interests opposed to those of the unrepresented person."[28]

---

[25] *United States v. Becker*, No. 10-40077-02-JAR, 2011 WL 93759, at *4 (D. Kan. Jan. 11, 2011) (citing *Locascio,* 6 F.3d at 933 (adopted by the Tenth Circuit in *Evanson,* 584 F.3d at 910)).

[26] *Evanson*, 584 F.3d at 909 (citing *Locascio,* 6 F.3d at 933-34).

[27] *Id*. (citing *Locascio,* 6 F.3d at 934).

[28] Ann. Mod. Rules Prof. Cond. § 4.3 Dealing with Unrepresented Person, comment 1.

KRPC 4.3 has been reviewed in the context of attorney disciplinary proceedings and/or whether counsel violated the ethical rule.[29]  However, a review of caselaw finds no District of Kansas or Kansas state cases disqualifying counsel on the basis of KRPC 4.3.

To determine whether an attorney violated KRPC 4.3, there must be clear and convincing evidence the attorney implied he was disinterested or the unrepresented person misunderstood the attorney's role in the matter.[30] But the unrepresented person's misunderstanding alone is not controlling. "The second part of KRPC 4.3 directs that an attorney who 'knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter' is to 'make reasonable efforts to correct the misunderstanding.'"[31]  The question, then, is whether the attorney should have known the unrepresented person misunderstood counsel's role[32]—whether there is clear and convincing evidence that it was highly probable the lawyer should have known of the unrepresented person's confusion.

---

[29] *See, e.g., United States v. Malik*, No. 15-CV-9092-CM-TJJ, 2017 WL 264544, at *5 (D. Kan. Jan. 20, 2017) (in the context of witness tampering, finding it was not improper or unethical for counsel to meet with a witness prior to her deposition); *In re Estate of Timmons*, 242 P.3d 1281 (Kan. Ct. App. 2010) (finding plaintiff's claim of actual fraud fails because the attorney was under no duty to communicate the law to plaintiff under either KRPC 4.3 or Kansas law); *In re Swarts*, 272 Kan. 28, 41, 30 P.3d 1011, 1023 (2001) (disciplinary proceeding where the Kansas Supreme Court determined, *inter alia*, the responding attorney did not violate KRPC 4.3).  *See also, e.g., In re Gamble*, 301 Kan. 13, 338 P.3d 576 (2014), *reinstatement granted sub nom. Matter of Gamble*, 305 Kan. 375, 382 P.3d 850 (2016); *In re Millett*, 291 Kan. 369, 241 P.3d 35 (2010), *reinstatement granted,* 295 Kan. 1069, 287 P.3d 932 (2012);  *In re Royer*, 276 Kan. 643, 78 P.3d 449 (2003), *reinstatement granted,* 277 Kan. 266, 84 P.3d 1045 (2004); *In re Pyle*, 278 Kan. 230, 91 P.3d 1222 (2004) (all attorney disciplinary proceedings).
[30] *In re Swarts*, 272 Kan. 28, 41 (2001).
[31] *In re Jensen*, 286 Kan. 1160, 1173 (2008).
[32] *See id.*

### E.    KRPC 1.12:  Former Judge, Arbitrator, Mediator or Other Third-Party Neutral

The final rule relied upon by Plaintiff is KRPC 1.12.  The relevant portions of this rule state:

> (a) . . . a lawyer shall not represent anyone in connection with a matter in which the lawyer participated personally and substantially as a judge or other adjudicative officer or law clerk to such a person or as an arbitrator, mediator or other third-party neutral, unless all parties to the proceeding give informed consent confirmed in writing.
> . . .
> (c) If a lawyer is disqualified by paragraph (a), no lawyer in a firm with which that lawyer is associated may knowingly undertake or continue representation in the matter unless [the disqualified lawyer is timely screened].

The definition of "third-party neutral" is found in KRPC 2.3(a):

> A lawyer serves as a third-party neutral when the lawyer assists two or more persons who are not clients of the lawyer to reach a resolution of a dispute or other matter that has arisen between them. Service as a third-party neutral may include service as an arbitrator, a mediator or in such other capacity as will enable the lawyer to assist the parties to resolve the matter.

Little caselaw exists analyzing KRPC 1.12.  But in *Klaassen v. Univ. of Kansas Sch. of Med.*,[33] the court analyzed whether a violation of Rule 1.12 constitutes a waiver of the attorney-client privilege.  In *Klaassen*, an attorney served in a prosecutorial role, but also represented an adjudicative officer in the same matter.  The U.S. Magistrate Judge found an attorney-client relationship still formed and the privilege applied.[34]  After the

---

[33] *Klaassen v. Univ. of Kansas Sch. of Med.*, No. 13-CV-2561-DDC-KGS, 2016 WL 3881334 (D. Kan. July 18, 2016).
[34] *Id.* at *3-*4.

ruling was appealed, the U.S. District Judge upheld the magistrate judge's decision.[35] But both opinions noted the lack of authority analyzing the rule. Two Kansas state cases discussed the rule in the context of a pro tem judge also acting as counsel in a criminal matter.[36] But no authority is directly on point with the facts at hand.

## V. Analysis

An overarching consideration in this matter is courts in the District of Kansas have found the violation of an ethical rule does not result in automatic disqualification of counsel.[37] Instead, the Court must determine if "the offending attorney's conduct threatens to taint the underlying trial with serious ethical violations."[38]

As explained below, the Court finds KRPC 4.3 and 1.12 unpersuasive under these facts. The key analyses in whether Mr. Rupe or the law firm should be disqualified will be under KRPC 3.7 and the unsworn witness rule. The crucial concerns facing this Court are the level of Mr. Rupe's involvement in the investigation of Plaintiff's Title IX

---

[35] *Klaassen*, 2016 WL 6138169, at *7.

[36] *See Boldridge v. State*, 289 Kan. 618, 624, 215 P.3d 585, 592 (2009); *Rivera v. State*, 174 P.3d 458 (Kan. Ct. App. 2008).

[37] *Klaassen*, 2016 WL 6138169, at *7 (citing *Layne Christensen Co.*, 2011 WL 1113543, at *5 (explaining that violations of the Kansas Rules of Professional Conduct "do not automatically trigger disqualification," instead, "disqualification is appropriate only where the offending attorney's conduct threatens to taint the underlying trial with serious ethical violations" (citations and internal quotation marks omitted)); *Barragree v. Tri-County Elec. Co-op, Inc.*, 950 P.2d 1351, 1359 (Kan. 1997) (explaining that, even if an attorney formed an attorney-client relationship that created a conflict of interest thus violating an ethical rule, disqualification of counsel is not automatic; instead, the court should consider a variety of factors before ordering disqualification such as (1) the nature of the ethical violation; (2) prejudice to the parties; (3) the effectiveness of counsel in light of the violations; (4) the public's perception of the profession; and (5) whether the motion to disqualify was used as a tactical device or as a means of harassment)).

[38] *Id*. at *7 (quoting, *inter alia*, *Layne Christensen Co. v. Purolite Co*., No. 09-2381-JWL-GLR, 2011 U.S. Dist. LEXIS 30471, 2011 WL 1113543, at *5 (D. Kan. Mar. 24, 2011)).

complaint; whether Mr. Rupe truly possesses material evidence; and whether he was a "participant in the events to be explored at trial." Most importantly, the Court must determine whether Plaintiff has provided enough evidence to demonstrate the level of Mr. Rupe's involvement.

## A.    Analysis of KRPC 3.7: "necessary witness"

To determine whether disqualification of Mr. Rupe or his law firm is appropriate, we look to the "*Smithson* test."[39]  Under this test, disqualification should not be ordered unless: (1) Mr. Rupe  would give evidence that is material to the issue being litigated, (2) such evidence is unobtainable from other sources, and (3) the testimony is prejudicial or potentially prejudicial to Mr. Rupe's client.[40]  All three *Smithson* factors must be present in order for an attorney to be disqualified.[41]

### 1.    Material Evidence

During the hearing, no witnesses were sworn or additional evidence provided; therefore, the evidence before the Court consists of those documents attached to the parties' briefing.  This includes Mr. Rupe's declaration and the Title IX report which does not mention him, along with emails between counsel and the parties and declarations of non-parties Ms. Greenfield and Ms. McCarthy, produced by Plaintiff.  Mr. Rupe's declaration admits he was present for a portion of Ms. Greenfield's interview, but her counsel was also present. (ECF No. 29-2.)  There is no clear evidence this interview

---

[39] *Greenfield*, 2019 WL 2250143, at *4 (citing *Schneider*, 2014 WL 6632939, at *2 (citing *LeaseAmerica Corp*, 19 Kan. App. 2d at 751 (adopting *Smithson* factors)).
[40] *Id*. (citing *Schneider*, 2014 WL 6632939, at *2 (citing *Smithson*, 411 S.E.2d at 856)).
[41] *Id*. (citing *Smithson*, 411 S.E.2d at 856) (emphasis added).

was relied upon in the report on Plaintiff's complaint. (*see* Report, ECF No. 29-1.) Although Ms. Greenfield was mentioned in the report related to her actions as the HR director, and her interview(s) were mentioned as related to Lewis Brisbois' assumption of the investigation (*Id.* at 5), there is no clear evidence the Greenfield interview was specifically relied upon to decide the investigation into Clark's complaint. Mr. Rupe swore he did not attend or participate in the interviews of those important actors in Plaintiff's complaint, including Victor Trilli, R. J. Allen, Jamahl DePriest, Levi Esses, and a member of the women's cheer squad.

Moreover, there is no clear indication of when Mr. Rupe became involved. Newman never identifies Mr. Rupe's specific role, but he states in his declaration that he is "an attorney representing Defendant Newman . . . in this lawsuit." (ECF No. 29-2.) Nor does Newman indicate when it retained or otherwise involved Mr. Rupe. Its response states only that it "retained the Title IX investigators on November 30, 2017"—those investigators being Mr. Schrag, Ms. Guerin and Ms. Anson. (ECF No. 29 at 2.) The evidence does show Mr. Rupe was involved no later than December 3, 2017, when he was copied on the email from Mr. Schrag to Plaintiff, notifying Plaintiff that Lewis Brisbois was taking over the Title IX investigation (ECF No. 19, Ex. A.)

Central to Plaintiff's argument is her belief Mr. Rupe was involved in interviews regarding the investigation of Plaintiff's Title IX complaint. And, although Ms. Greenfield and Ms. McCarthy's declarations make it appear Mr. Rupe was more involved in the Title IX investigations than what seems appropriate from an outside vantage point—there is no *actual evidence* that either Ms. Greenfield or Ms. McCarthy's

interviews were used to determine the outcome of Plaintiff's individual Title IX complaint. Ms. Greenfield does not mention Plaintiff or the investigation into Plaintiff's complaint in her declaration. Ms. McCarthy was not mentioned at all in the report on Plaintiff. The available evidence does not indicate Ms. Greenfield was questioned as a witness *for Clark's complaint*. Although this Court's analysis would be certainly be different if addressing claims by Ms. Greenfield or Ms. McCarthy—there does not seem to be any evidence before the Court that Mr. Rupe possesses evidence specific to *Plaintiff's* Title IX complaint – only supposition. But supposition, does not meet the threshold of material evidence.

Defendants cite to this Court's prior opinion in *Carter v. Spirit Aerosystem, Inc.*,[42] to support Mr. Rupe acting as Newman's legal counsel through the investigation and continuing in this lawsuit. But the Court finds this argument unpersuasive, as the facts in *Carter* were entirely distinguishable. In *Carter*, the pro se plaintiff argued because defense counsel represented defendant during the EEOC and DOL investigation of his complaints, she was disqualified from representing Spirit in the later lawsuit.[43] The situation before us is different—here we have a single law firm where one partner claims to be acting as legal counsel, while at the same time three other attorneys from the same firm are acting as "independent" investigators. *Carter* is inapplicable. And, the evidence is still lacking.

---

[42] Def's Response, ECF No. 29 at 6-7 (citing *Carter v. Spirit Aerosystems, Inc.*, No. 16-1350-EFM-GEB, 2017 U.S. Dist. LEXIS 140637, at *2 (D. Kan. Aug. 31, 2017).
[43] *Carter*, 2017 U.S. Dist. LEXIS 140637, at *2.

## 2. Evidence Obtainable from Other Sources

Even if Mr. Rupe did possess material evidence, based on information presented to the Court at this time, it appears any such evidence would be cumulative to the evidence Plaintiff would glean from the investigators themselves. Mr. Rupe was present at both Ms. McCarthy and Ms. Greenfield's interviews, but the evidence demonstrates Mr. Schrag was also present. And although Mr. Rupe was copied on multiple emails between Mr. Schrag and Plaintiff's counsel, those emails were generated by Mr. Schrag. There is no question Mr. Schrag was the investigator and because he could be called as a witness, he will not participate in the legal defense of this case. But Mr. Schrag appears to possess—at minimum—the very same evidence Mr. Rupe would possess. Additionally, it appears Newman officials and all the Title IX Investigators would possess the same information. On review of all evidence presented in the briefing, there appears no evidence produced by Plaintiff which indicates Mr. Rupe is the only individual who possesses any isolated information relevant to Plaintiff's complaint. Therefore, this *Smithson* factor is not met with convincing evidence.

## 3. Testimony Prejudicial to Newman

An important piece of Plaintiff's claims involve how Newman investigated her Title IX complaint. So, it is conceivable, given the report's conclusion that Newman needed to perform remedial action to ensure a discrimination-free environment, Mr. Rupe may potentially give testimony prejudicial or potentially prejudicial to his client, Newman. Particularly considering the confusion surrounding the Lewis Brisbois attorneys' roles in the investigation, potential prejudice to both Newman and the law firm

does not appear completely speculative. If Mr. Rupe and other members of the same law firm were all to testify at trial, the jury could confuse "what is testimony and what is argument, and whether his statements should be taken as proof or as an analysis of the proof."[44] For these reasons, the third *Smithson* factor is met.

### 4.    Substantial Hardship

Without all *Smithson* factors being met, it is unnecessary to determine whether the "substantial hardship" exception should apply to relieve Mr. Rupe from disqualification under KRPC 3.7.

### 5.    Conclusion on KRPC 3.7 analysis

Even if the third factor is met, and even if the Court were to consider the first factor satisfied, the evidence does not bear out Mr. Rupe's possession of non-cumulative evidence under the second *Smithson* factor. All three factors must be present for disqualification. Therefore, under the *Smithson* analysis, the Court finds Plaintiff has not met her burden to demonstrate Mr. Rupe should be disqualified.

Plaintiff's motion seeks to disqualify not only the individual attorneys, but the entire Lewis Brisbois law firm under KRPC 3.7. But reviewing KRPC 3.7, the Court finds disqualification of an entire firm is not contemplated by this rule. Plaintiff provides no authority for her claim that the entire firm should be disqualified. And, the rule itself permits "[a] lawyer [to] act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness[.]"[45]

---

[44] *Greenfield v. Newman Univ., Inc.*, 2019 WL 2250143, at *7.
[45] KRPC 3.7(b).

## B. Unsworn Witness Analysis

Although the *Smithson* factors are not all met under KRPC 3.7 for Mr. Rupe to be disqualified as a *necessary* witness (namely the cumulative piece of his knowledge), the *unsworn* witness analysis is slightly different. As described above, an unsworn witness is:

> an attorney whose 'relationship to his client results in his having first-hand knowledge of the events presented at trial,' enabling the attorney to 'subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross-examination.'[46]

An "unsworn witness" issue arises when "an attorney *was a participant* in events to be explored at trial."[47] Even if the attorney is not called as a witness, he can still be disqualified, because his actions as an advocate may be impaired by his relationship to the events in question.[48]

> "For example, the attorney may be constrained from making certain arguments on behalf of his client because of his own involvement or may be tempted to minimize his own conduct at the expense of his client. Moreover, his role as advocate may give his client an unfair advantage, because the attorney can subtly impart to the jury his first-hand knowledge of the events without having to swear an oath or be subject to cross examination."[49]

An attorney acting as an unsworn witness has no actual conflict of interest; he is "not at odds with his client."[50] Instead, the detriment here would occur to Plaintiff, because Defendants and their counsel could gain an unfair advantage, and to the Court

---

[46] *Evanson*, 584 F. 3d at 910 (citing *Locascio*, 6 F.3d at 933).
[47] *Id.* at 909 (emphasis added).
[48] *Becker*, 2011 WL 93759, at *4 (citing *Locascio,* 6 F.3d at 933 (adopted by the Tenth Circuit in *Evanson,* 584 F.3d at 910)).
[49] *Id.*
[50] *Evanson*, 584 F.3d at 909 (citing *Locascio,* 6 F.3d at 933-34).

itself because the factfinding process is impaired.[51]

Plaintiff does not argue Mr. Rupe is the only person who could testify about the investigation, or Ms. Greenfield or Ms. McCarthy's interviews, but he and others from the law firm are the only people who know about the *entirety* of the investigation. The Court acknowledges Plaintiff's concern regarding the breadth of the law firm's collective knowledge. And, even if Mr. Rupe stayed in his lane as "advocate" and the investigators stayed in their lanes as "neutrals", as suggested by Defendants—as previously noted, there is something about this entire situation that creates understandable discomfort.

It is not illogical to predict that Mr. Rupe's advocacy might be limited by his relationship to not just his client but to the investigators. It seems unlikely he would zealously question the investigators—members of his own law firm—over their handling of the investigation, which is at issue in this case. His relationship to not only Newman but to his law partners may limit the positions he takes or arguments he makes throughout the life of the case. Likewise, the testimony of the investigators could be limited by their relationship to Mr. Rupe—the managing partner of their law firm. They would be hard-pressed to admit to any potential mishandling of the investigation during questioning by their senior partner.

The Court is left with many questions regarding the depth of Mr. Rupe's individual knowledge regarding the investigation of this case: he was included in email correspondence between Plaintiff's counsel and Mr. Schrag regarding the Title IX investigation, and he was involved in both Ms. Greenfield and Ms. McCarthy's

---

[51] *Id*. (citing *Locascio,* 6 F.3d at 934).

interviews. But as Mr. Rupe swore in his declaration and notes in his brief, he was copied as counsel for Newman just as Plaintiff's counsel was copied, and the connections between Ms. Greenfield and Ms. Clark, and Ms. McCarthy and Ms. Clark were simply not borne out by the evidence presented.

Although Plaintiff argues Mr. Rupe has "more information than he leads the Court to believe" (ECF No. 31 at 9), this feeling or conjecture on her part does not meet her burden of proof to demonstrate evidence supporting disqualification. The only empirical evidence before the Court is Mr. Rupe being copied on emails—which he would have legitimately received as counsel for Newman—and his participation in two interviews which are not directly related to Plaintiff's complaint. Disqualification is a harsh remedy, and the assumptions about what may have been happening behind the scenes is not enough to meet that burden. Therefore, under the "unsworn witness" analysis, the Court finds Plaintiff has not met her burden to demonstrate that Mr. Rupe should be disqualified.

## C. Analysis of KRPC 4.3: Dealing with Unrepresented Persons

Although Plaintiff claims she was confused by the investigators' claims of independence, caselaw indicates the unrepresented person's subjective view does not control.[52] Rather, it is whether the lawyer dealing with the unrepresented person knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter.[53] The lawyer who knows or should know of the confusion must "make

---

[52] *See In re Jensen*, 286 Kan. at 1173.
[53] *Id.*

reasonable efforts to correct the misunderstanding."[54]

Under these circumstances, the Court tends to agree with Defendants regarding the KRPC 4.3 analysis. Mr. Schrag appears to have been the attorney making representations to Plaintiff, but he is not counsel of record in this case and will be disqualified on an unopposed basis as described below (*see infra*, Part V at 28). Even if Mr. Schrag were required to correct any misunderstanding, Plaintiff provides no authority suggesting Mr. this alleged ethical concern of Mr. Schrag's would be imputed to the entire law firm. And Plaintiff provides no evidence—let alone the required "clear and convincing evidence"—that she had direct contact with Mr. Rupe such that he had an opportunity to mislead her, or that it was highly probable Mr. Rupe should have reasonably known of her confusion.

Additionally, Plaintiff's counsel acknowledged during the hearing that Plaintiff became represented by counsel soon after she received the first email from Mr. Schrag on December 3, and briefing demonstrates the first email to Plaintiff's counsel was as early as December 8, 2017. This would also negate the applicability of KRPC 4.3, as the rule applies only to unrepresented parties. For the reasons stated here, the Court finds KRPC 4.3 inapplicable to the facts at hand.

### D.  Analysis of KRPC 1.12:  Former Third-Party Neutral

Plaintiff's KRPC 1.12 argument is sparse, simply stating the rule and arguing that because Plaintiff was told the investigators were "independent", it follows that they were third-party neutrals.

---

[54] *Id.*

But Plaintiff has provided no evidence or authority that the investigators of Lewis Brisbois—whether Mr. Rupe acted as one or not—acted to assist persons or entities who were not clients to resolve a dispute. Mr. Rupe was acting as Newman's counsel. The investigators, while describing themselves as "independent", also clearly described themselves as "retained by Newman." (*See* email, ECF No. 19, Ex. A.) Nothing in the facts indicate any of the Lewis Brisbois lawyers acted as a third-party neutral under the KRPC 2.3 definition.

Plaintiff does not address Defendants' KRPC 1.12 arguments in her reply brief. And in her initial KRPC 1.12 argument, she notes the Lewis Brisbois law firm was hired to make independent findings and provide Newman, for Ms. Clark's benefit, an analysis, and Ms. Clark believes the firm were independent, third party neutrals, "hired for her benefit." Plaintiff cannot argue the investigators were both neutral yet also hired "for her benefit." This argument is inconsistent. Plaintiff has not met her burden to demonstrate Mr. Rupe or the Lewis Brisbois law firm acted as third-party neutrals as defined by KRPC 2.3, and the lack of authority and any evidence or additional argument together require the Court to deny Plaintiff's motion on the basis of KRPC 1.12. as unconvincing.

## VI. Conclusion

Finding KRPC 4.3 and 1.12 unpersuasive under these facts, the Court's focus is on KRPC 3.7 and the "unsworn witness" rule to decide Plaintiff's motion. Applying the *Smithson* test to determine whether a KRPC 3.7 conflict exists, and analyzing the "unsworn witness" rule, the Court finds Plaintiff has not met her burden to demonstrate Mr. Rupe should be disqualified. Plaintiff has simply not provided enough evidence to

demonstrate the level of Mr. Rupe's involvement. However, the denial of Plaintiff's motion is without prejudice to the later discovery of any unique or first-hand information regarding Mr. Rupe's involvement. Additionally, the Court finds the law firm of Lewis Brisbois Bisgaard & Smith, LLP shall not be disqualified from representing Defendants in this matter.

Although Plaintiff also seeks the disqualification of Mr. Schrag, Ms. Guerin and Ms. Anson, the Court need not analyze this request because none of the attorneys have entered their appearance in this case and Defendants deny the attorneys are involved in representing them in this lawsuit. But given their clear involvement in the matter, Mr. Schrag, Ms. Guerin and Ms. Anson are disqualified from representing Defendants in this lawsuit, and the Court grants this portion of Plaintiff's motion.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Disqualify Lewis Brisbois Bisgaard & Smith, LLP, from representing Defendants in this case (**ECF No. 18**) is **GRANTED in part** as to attorneys Jeremy K. Schrag, Christina M. Guerin, and Laura J. Anson and **DENIED without prejudice** as to attorney Alan L. Rupe.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 13th day of February 2020.

s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge