# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

DESTINY CLARK,                          )
                                        )
          **Plaintiff,**                )
                                        )
v.                                      )          **Case No. 19-1033-JWB-GEB**
                                        )
NEWMAN UNIVERSITY, INC.,                )
                                        )
          **Defendants.**             )
_____)

## MEMORANDUM AND ORDER
## and REPORT AND RECOMMENDATION

This matter is before the Court on Defendant's Motion for Leave to File an Amended Answer to Plaintiff's Complaint (**ECF No. 120**) and Plaintiff's Motion for Extension of her Rebuttal Deadline (**ECF No. 149**).  On January 27, 2021, the Court conducted a motion hearing.  Plaintiff Destiny Clark appeared through counsel, Corey Adams and Jennifer Hill.  Defendant Newman University, Inc. appeared through counsel, Colby Everett, Ellen Rudolph, and Nanette Kalcik. After careful consideration of all briefing and hearing arguments from counsel, the Court orally **GRANTED** Plaintiff's motion for extension (ECF No. 149) and established new deadlines for this case.  The undersigned also **RECOMMENDED DENIAL**[1] of Defendant's motion to amend its answer (ECF No. 120).  This order memorializes the Court's rulings from the hearing.

_____

[1] If a magistrate judge's order denies a motion to amend and a claim or defense is not permitted to be asserted in a case, courts in this District have found such a ruling to be dispositive for which review may be sought pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  *See, e.g., Wilson v. Wal-Mart Stores, Inc.*, No. 07-2263-JWL, 2008 WL 2622895, at *1 (D. Kan. June 30, 2008) (reviewing the magistrate judge's recommendation of denial of plaintiff's motion to

## I.     Background[2]

The factual background of this matter has been explored extensively in prior orders (*see* Mem. and Orders, ECF Nos. 65, 82) and will not be repeated here. Summarily, Plaintiff is a former head volleyball coach at Newman University.  After her employment ended, she filed this case on February 14, 2019 against Newman and Victor Trilli, Newman's athletic director, asserting a variety of claims, including: Title IX retaliation; violation of the Equal Pay Act; Title VII retaliation; hostile work environment; gender discrimination; intentional infliction of emotional distress; negligent hiring/retention; negligent training/failure to train; and negligent supervision. Following Defendants' dispositive motion, Plaintiff's state claims for negligent hiring, supervision, or retention and her claims for intentional infliction of emotional distress were dismissed, as was defendant Trilli. (*See* Mem. and Order, ECF No. 65.)

Early disputes in this lawsuit delved into the Title IX investigation and Newman's retention of the law firm of Lewis Brisbois Bisgaard & Smith, LLP to complete the investigation. (*See* Mem. and Order, ECF No. 82.) Despite these early issues, a Scheduling Order was entered in June 2019 (ECF No. 28), which among other deadlines, established a deadline of July 19, 2019 for any party to seek amendment of the pleadings.

---

amend the complaint.  The magistrate judge found no good cause for filing the amendment after the scheduling order deadline and found the motion should be denied based on plaintiff's undue delay and resulting prejudice to defendant.  The district judge overruled plaintiff's objection and upheld the magistrate judge's recommendations).

[2] Unless otherwise noted, the information recited in this section is taken from the briefs regarding Defendant's motion for leave to file an amended answer (ECF Nos. 120, 121, 123, 137), from the briefs regarding Plaintiff's motion for extension (ECF Nos. 149, 152); and from the Complaint (ECF No. 1) and Answer (ECF No. 77). This background information should not be construed as judicial findings or factual determinations.

The schedule was later revised at the parties' request but a revised deadline for amendment was not sought. (ECF Nos. 61, 85.)  After discovery disputes derailed the progress of the case,[3] a Phase II Discovery Order was entered a year after the initial schedule was set, on June 22, 2020. (ECF No. 112).  The Phase II schedule was then amended twice at the parties' request (ECF Nos. 116, 131) and the following deadlines were set:  Defendant's expert disclosures were due January 8, 2021; any rebuttal expert disclosures were due January 15, 2021; the deadline for all discovery was set for January 22, 2021, and a Pretrial Conference was set for February 2, 2021.  Despite the repeated modifications to the schedule, the deadline for amendment of pleadings was not amended nor was it requested to be, thus it remained at July 19, 2019.

Fifteen months after the deadline expired, on November 5, 2020, Defendant filed its motion for leave to file an amended answer to Plaintiff's Complaint (ECF No. 120), and on January 15, 2021, Plaintiff filed her motion for a four-week extension of her deadline to serve rebuttal expert disclosures. (ECF No. 149.)  Both motions were opposed.

As noted above, on February 2, 2021, the undersigned held a motion hearing to discuss the pending motions.  After announcing the Court's rulings, a new schedule was established to govern the remainder of the case, and the Court's analysis is explained below.

---

[3] A review of the docket shows discovery hearings on the following dates:  February 12, 2020 (Order, ECF No. 81); February 19, 2020 (Order, ECF No. 85); March 6, 2020 (Order, ECF No. 93); and April 23, 2020 (ECF No. 103).

## II.   Defendant's Motion for Leave to File an Amended Answer to Plaintiff's Complaint (ECF No. 120)

### A.   Parties' Positions

#### 1.   Defendant's Arguments

Defendant asks for leave to file an amended answer to include a new affirmative defense under the Religious Freedom Restoration Act, 42 U.S.C. ch. 21B § 2000bb, *et seq*. ("RFRA").  Defendant contends "Newman is a Catholic university conforming with the ideals and beliefs of the Sisters of the Adorers of the Blood of Christ (the "Sisters")." (Def.'s Mem., ECF No. 121 at 2.)  Defendant asks to include the following single new paragraph (¶23) in an amended answer: "Plaintiff's claims are barred, in whole or in part, by the Religious Freedom Restoration Act and/or the Ministerial Exception Doctrine." (ECF No. 121-1, at 22 ¶ 23.) Defendant contends "already discovered evidence may bar or limit Plaintiff's recovery because it shows that Plaintiff's behavior while employed with Newman did not comport with the Sisters' mission." (ECF No. 121 at 4.)

Defendant argues it acted quickly in seeking amendment because the U. S. Supreme Court ruling in *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049 (2020) was issued July 8, 2020, and by October 15, defense counsel sought Plaintiff's approval to amend. After exchanging views and authority for their positions, Plaintiff declined to consent to the amendment and Defendant filed its motion to amend on November 5, 2020.

Defendant contends the *Our Lady* ruling "expanded the previously recognized "ministerial exception" to any employee of a religious organization that performs a vital

role in advancing the mission of that organization," and therefore the "'ministerial exception' applies to more than just ministerial employees," including Plaintiff. (ECF No. 121 at 3.) Defendant also argues this affirmative defense arises from the after-acquired evidence doctrine, which is recognized in the Tenth Circuit and already asserted in Newman's Answer. (*Id.*)

Defendant maintains leave to amend should be freely given, its request is timely, its request is sought in good faith, and it is based on new Supreme Court precedent. Until *Our Lady* was decided, Defendant believes this defense would not have been plausible, but now, the law has been expanded to cover Plaintiff. (*See* ECF No. 121.)

Defendant also argues Plaintiff is not prejudiced by the defense because Defendant is not changing tactics or adjusting its theory, and the defense does not require discovery of new facts. Defendant essentially maintains Plaintiff knew she worked for a Catholic university and knew her interactions with young student athletes would be held to the mission of the college. (*See id.*)

Defendant presents a unique argument that the Fed. R. Civ. P. 16 "good cause" requirement does not apply to a request to amend an answer, but only to a party's request to amend a complaint or add a counterclaim. (Reply, ECF No. 137.) And, even if good cause is required, Defendant contends it is satisfied by the change in the law.

In its briefing, Defendant does not address the looming pretrial conference and close of discovery, aside from arguing no additional discovery is needed, and that at the time of its Reply brief on December 3, 2020, it believed Plaintiff had "more than enough

time to seek discovery on this affirmative defense, if she wishes." (Def.'s Reply, ECF No. 137 at 9.)

### 2.     Plaintiff's Arguments

Plaintiff rests on three primary arguments:  1) Defendant fails to show good cause to amend; 2) the addition of an affirmative defense under RFRA would be futile; and 3) she would be prejudiced by the amendment.  First, Plaintiff argues Defendant fails to show good cause to amend.  She contends RFRA has been federal law since 1993 and is generally at issue when the employer is a religious institution.  She argues nothing about the *Our Lady* opinion gives Defendant good cause to seek amendment at this late date. Plaintiff maintains the *Our Lady* opinion does not change the law or defenses available in this case. (Pl.'s Resp., ECF No. 123.)

Plaintiff also contends Defendant wholly fails to identify how she allegedly violated the Catholic faith or what duties as a volleyball coach required her to act in a "ministerial capacity."  Plaintiff maintains Defendant's failure to offer these details supports a lack of good cause.  (*Id*. at 5.).

Plaintiff argues Defendant's interpretation of the *Our Lady* opinion is incorrect. She contends it is not actually new law, but instead, *Our Lady* simply "overturned the Ninth Circuit in two cases where the [prior] *Hosanna-Tabor* holding was not properly applied. The ministerial exception was addressed and applied in 2012." (ECF No. 123 at 9.)  And, the *Our Lady* opinion makes clear this exception applies only to "ministers"— "focus[ing] on the function performed by persons who work for religious bodies." (*Id*., citing the opinions.)

Plaintiff contends Defendant has offered no allegations that Plaintiff taught any form of religion, that she was either obligated or prayed with her players, or that she had any role in the religious upbringing of the college athletes she interacted with. (*Id*. at 9.) These facts are quite unlike the *Our Lady* and *Hosanna-Tabor* cases, where the plaintiffs were "either called ministers, given a ministerial role, or, at very least, tasked to teach religion to students." The focus must be on the position itself, not on the religiosity of the institution, and here, Defendant provided no evidence at all that Plaintiff's position could be considered ministerial. (*Id*. at 9-10.)

Finally, Plaintiff argues she would be unduly prejudiced by Defendant's amendment. If Defendant is permitted to amend, Plaintiff will need to conduct discovery on issues related to Newman's Religious Order's mission, and whether coaches are required to incorporate issues of faith into their work, etc. (*Id*. at 10.)   Additionally, Plaintiff's deposition took place in September 2020, and none of the questioning or testimony was related to Plaintiff's religious training or any such "ministerial" work. (*Id*. at 10-11.)

## B.    Legal Standards

### 1.    Fed. R. Civ. P. 16 – Good Cause

When a proposed amendment is offered after the deadline to amend pleadings has passed, Fed. R. Civ. P. 16(b)(4) is implicated, because the schedule itself is affected. Rule 16(b)(4) provides a "schedule may be modified only for good cause and with the judge's consent."   When considering a motion to amend any pleading filed past the scheduling order deadline, "judges in this District have consistently applied a two-step

analysis based on both Rule 16(b) and Rule 15(a)."[4]  In such cases, the court "first determines whether the moving party has established good cause within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion."[5]  Only after finding good cause has been shown will the court proceed to the second step and evaluate whether the broader Rule 15(a) standard for amendment has been satisfied.

"Good cause" under Rule 16(b)(4) requires the moving party to "show that the amendment deadline could not have been met even if it had acted with due diligence."[6] "Carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."[7]  The party requesting an untimely amendment "is normally expected to show good faith on its part and some reasonable basis for not meeting the deadline."[8] A lack of prejudice to the nonmovant does not constitute "good cause."[9] In the context of a motion to amend to assert affirmative claims, if a party knows of "the underlying conduct but simply failed to raise [its] claims, . . . the claims are barred."[10]  But, "Rule 16's good

---

[4] *Carefusion 213, LLC v. Professional Disposables, Inc.*, No. 09–2616–KHV–DJW, 2010 WL 4004874, at *3 (D. Kan. Oct. 12, 2010) (citations omitted).  *See also Farr v. Jackson Nat'l Life Ins. Co.*, No. 19-4095-SAC-ADM, 2020 WL 5118068, at *2 (D. Kan. Aug. 31, 2020) (citing *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014); and Fed. R. Civ. P. 16(b)(4)).
[5] *Carefusion 213*, 2010 WL 4004874, at *3.
[6] *Id.*
[7] *Livingston v. Sodexo & Affiliated Co.*, No. 11-4162-EFM-KGS, 2012 WL 2045292, at *1 (D. Kan. June 6, 2012) (citing *Deghand v. Wal–Mart Stores, Inc.*, 904 F. Supp. 1218, 1221 (D. Kan. 1995) (internal citations omitted)).
[8] *Id.*
[9] *Id.* (citing *Deghand*, 904 F. Supp. at 1221).
[10] *Farr*, 2020 WL 5118068, at *2 (citing *Gorsuch*, 771 F.3d at 1240; *Green v. Blake*, No. 18-2247-CM, 2020 WL 816016, at *2 (D. Kan. Feb. 19, 2020) (applying the same standard on a motion to amend an answer to assert affirmative defenses)).

cause requirement may be satisfied . . . if a [party] learns new information through discovery or if the underlying law has changed."[11]

The district court has discretion to decide whether the movant has established good cause sufficient to modify the scheduling order deadlines, and such a decision is reviewed only for abuse of discretion.[12]  If the Court finds Rule 16 is satisfied, the Court then analyzes the request for amendment under Fed. R. Civ. P. 15.

### 2.      Fed. R. Civ. P. 15 – Factors for Amendment

The Rule 15 standard for permitting a party to amend his or her complaint is well established.  In cases such as this, where the time to amend as a matter of course has passed, without the opposing party's consent a party may amend its pleading only by leave of the court under Rule 15(a)(2).

Rule 15(a)(2) provides leave "shall be freely given when justice so requires," and the decision to allow an amendment is within the sound discretion of the court.[13]  The court considers a number of factors in deciding whether to allow an amendment, including timeliness, prejudice to the other party, bad faith, and futility of amendment.[14] In exercising its discretion, the court must be "mindful of the spirit of the federal rules of

---

[11] *Farr*, 2020 WL 5118068, at *2 (citing *Gorsuch*, 771 F.3d at 1240).

[12] *Carefusion 213*, 2010 WL 4004874, at *3 (citations omitted).

[13] *See J. Vangel Elec., Inc. v. Sugar Creek Packing Co.*, No. 11–2112–EFM, 2012 WL 5995283, at *2 (D. Kan. Nov. 30, 2012) (citing *Panis v. Mission Hills Bank*, 60 F.3d 1486, 1494 (10th Cir. 1995)).

[14] *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Monge v. St. Francis Health Ctr., Inc*., No. 12–2269–EFM-JPO, 2013 WL 328957, at *2 (D. Kan. Jan. 10, 2013), *report and recommendation adopted*, 2013 WL 328986 (D. Kan. Jan. 29, 2013).

civil procedure to encourage decisions on the merits rather than on mere technicalities."[15] The Tenth Circuit Court of Appeals acknowledged that Rule 15 is intended "to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties,'"[16] especially in the absence of bad faith by an offending party or prejudice to a non-moving party.[17]   With these standards in mind, this Court evaluates Defendant's motion.

### C.     Analysis

The first question before the Court is whether Defendant has shown good cause under Rule 16 for not seeking amendment before the scheduling order deadline. Defendant sets forth a novel argument: although the Tenth Circuit has applied the Rule 16 analysis to motions to amend the complaint and motions to amend a counterclaim,[18] Defendant maintains the Circuit has not yet applied the standard to a motion to amend an answer to include an affirmative defense. (ECF No. 137 at 2-4.)

In spite of Defendant's creative argument about whether the Tenth Circuit has set forth a binding standard, the judges in the District of Kansas "consistently" apply the Rule 16 good cause standard to any request to amend a pleading after the scheduling

---

[15] *Hinkle v. Mid-Continent Cas. Co*., No. 11–2652–JTM-KMH, 2012 WL 2581000, at *1 (D. Kan. July 3, 2012) (citing *Koch v. Koch Indus.*, 127 F.R.D. 206, 209 (D. Kan. 1989)).

[16] *Carefusion 213*, 2010 WL 4004874, at *4 (citing *Minter*, 451 F.3d at 1204) (quoting *Hardin v. Manitowoc–Forsythe Corp.,* 691 F.2d 449, 456 (10th Cir. 1982)).

[17] *See AK Steel Corp. v. PAC Operating Ltd. P'ship*, No. 15-9260-CM-GEB, 2016 WL 6163832, at *4 (D. Kan. Oct. 24, 2016) (collecting cases; internal citations omitted).

[18] Def.'s Reply, ECF No. 137 at 3 (citing *Gorsuch,* 771 F.3d at 1241 (adopting Rule 16 good cause standard for amending a complaint, but not an answer); *Sil-Flo, Inc. v. SFHC, Inc.*, 917 F.2d 1507, 1518–19 (10th Cir. 1990) (adopting Rule 16(b)'s good cause requirement in the context of counterclaims asserted after the scheduling order deadline)).

order deadline has passed.[19] And, Defendant's request clearly affects the scheduling of the case and amendment of the operative scheduling order, so there is no question Rule 16 is implicated. Therefore, this Court prefers to follow the approach adopted routinely in this District.

From a practical standpoint, though, the "good cause" standard generally results in an analysis similar to the "timeliness" factor analyzed under Rule 15. The result is largely consistent, regardless of the title given the standard. Whether the finding is couched in "good cause" terms under Rule 16 or whether it is analyzed on timeliness under Rule 15, the Court finds Defendant's request untimely.

Analyzing good cause in conjunction with timeliness, the Court applies the Rule 15 factors of timeliness, prejudice to the other party, bad faith, and futility to the facts at hand. Each factor is addressed in turn.

### 1.   Good cause / Timeliness.

Defendant's deadline to amend their pleadings under the Scheduling Order was July 19, 2019. (ECF No. 28). When the Scheduling Order was amended, the parties did not request to extend the deadline to amend pleadings, and discovery was set to close on January 22, 2020. (ECF No. 131.)

---

[19] *See Livingston*, 2012 WL 2045292, at *1 (noting, "In addition, this District *has consistently applied* a two-step analysis based on both Rule 16(b) and Rule 15(a) when deciding a motion to amend that is filed after the scheduling order deadline.") (emphasis added). *See also, e.g., Farr*, 2020 WL 5118068, at *1; *Schlup v. Depositors Ins. Co.,* No. 19-2095-HLT-GEB, 2020 WL 5094709, at *12 (D. Kan. Aug. 28, 2020). *See also Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-cv-2381-JWL-GLR, 2011 WL 3847076, at *3 (D. Kan. Aug. 29, 2011) ("Although the Tenth Circuit has expressly declined to decide whether a party must satisfy the requirements of Rule 16(b) and Rule 15(a) in such circumstances, *this Court routinely applies a two-step analysis* based on the two rules in these situations") (emphasis added).

Even if Defendant believed the *Our Lady* analysis, issued on July 8, 2020, opened a new avenue of defense, they inexplicably waited until mid-October to broach the subject with Plaintiff.  They then waited until November—four months after the Supreme Court opinion—to file their motion.  As recently analyzed by another court in this District, "A party does not demonstrate good cause to modify a scheduling order to accommodate an otherwise untimely motion to amend by simply pointing to information learned after that deadline. Rather, the party must also show it acted diligently in moving to amend once it learned of this new information."[20]  In that case, the court denied defendants' motion to amend to add affirmative defenses, largely due to the timeliness of the motion and the conclusion defendant failed to demonstrate good cause for its two-month unexplained delay.[21]

Likewise, in the instant action, although Defendant repeatedly points to the July 8, 2020 decision in *Our Lady*, it does not adequately explain the delay between July and October when it first reached out to Plaintiff or November when it filed its motion.  Therefore, the Court finds the belated request untimely and finds this factor weighs against amendment.

### 2.   **Bad Faith**.

Neither party argues bad faith, and the Court observes none.  Therefore, this factor is considered neutral to the analysis.

---

[20] *Farr v. Jackson Nat'l Life Ins. Co.*, No. 19-4095-SAC-ADM, 2020 WL 5118068, at *1 (D. Kan. Aug. 31, 2020).
[21] *Id.*

### 3.    Prejudice to Plaintiff.

This "most important"[22] factor, along with timeliness, is where the rubber meets the road in this situation.  Although Defendant previously included the "after-acquired evidence" defense in its Answer, this new theory of defense is much more specific, and it appears this theory would not be borne out by prior discovery.  There seems little doubt there will need to be discovery on whether Plaintiff was actually entrusted with the responsibility of instructing her student-athletes in the faith.[23] Although Defendant points to excerpts from its student-athlete handbook already produced, it seems additional discovery would need to be conducted to examine any employment agreement, specific expectations for Plaintiff's faith-related duties, and likely additional depositions of Plaintiff and Defendant's representative(s).

This case has already been plagued with multiple delays. This one-plaintiff employment discrimination case has been languishing in the discovery phase for more than 18 months already.  Even providing latitude to the parties considering the current COVID-19 pandemic, this is an exceptionally long period for discovery in this type of litigation.  The close of discovery has technically passed (although Plaintiff seeks an extension for her rebuttal expert). Essentially reopening discovery to include possible written discovery and/or depositions to flesh out Defendant's proposed defense is unduly prejudicial to Plaintiff in this nearly two-year-old case.

---

[22] *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *4 (D. Kan. Aug. 29, 2011) (citing *Minter,* 451 F.3d at 1207 and noting "the prejudice factor is the "most important" consideration in the decision.")
[23] *See* discussion *infra* part II.C.4.

Although both parties introduce petty arguments regarding how long it has taken to schedule depositions, the Court finds neither argument convincing, but rather an extension of the disputes which have plagued this case. (*See* Pl.'s Resp, ECF No. 123 at 10; Def.'s Reply, ECF No. 137 at 9.)  And though the Court understands it is providing additional time for Plaintiff to disclose her expert (*see* discussion *infra* Section III) and time will now be built into the schedule to permit review of this recommendation, that time does not cure the additional effort and expense Plaintiff would incur by reopening discovery at this late stage.

Therefore, the Court finds an amendment would unduly prejudice Plaintiff and weighs considerably against amendment at this stage of the litigation.

### 4.    **Futility**.

Defendant's request is decided herein on the analysis of good cause/timeliness and prejudice to Plaintiff without going so far as to make specific findings on futility. Particularly in this dispute, there is little need to suggest futility findings given the District Judge will consider the issue of amendment on the undersigned's recommendation. Even so, this Court suspects the amendment edges toward futility.

The "ministerial exception" protects religious institutions from employment discrimination suits by certain key employees. In *Our Lady*, the Supreme Court examined two employment discrimination cases decided earlier by the Ninth Circuit Court of Appeals.[24] In each case, the Ninth Circuit applied the "ministerial exception" test previously outlined in the 2012 Supreme Court case of *Hosanna-Tabor Evangelical*

---

[24] *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049 (2020).

*Lutheran Church and School v. EEOC*[25] to reverse the lower courts' rulings dismissing the cases.  But in *Our Lady*, the Court found the Ninth Circuit had applied "too rigid a test" and found although neither teacher formally held the title of "minister," the Court must still examine the employees' "core responsibilities" and "the religious institution's explanation of the role of its employee in the life of the religion."[26]  The Court looked for evidence that both employees "performed vital religious duties."[27] Ultimately, the Court "called on courts to take all relevant circumstances into account and to determine whether each particular position implicated the fundamental purpose of the exception"[28] by determining in each circumstance whether the teachers at religious schools "are entrusted with the responsibility of instructing their students in the faith."[29]

Defendant contends this Court should not address the futility of its proposed "ministerial exception" defense in the context of its motion to amend. (ECF No. 137 at 5.)  It cites a 2003 opinion from this District, *McCormick v. City of Lawrence*,[30] where the magistrate judge permitted amendment and declined to decide the motion on futility grounds, finding it was better to address the dispositive arguments at other procedural junctures, whether a motion to dismiss or summary judgment.  And true, this own Court has opined an issue of futility is better decided by the district judge on a dispositive

---

[25] *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC,* 565 U.S. 171 (2012).
[26] *Our Lady*, 140 S. Ct. at 2066.
[27] *Id*. at 2066.
[28] *Id*. at 2067.
[29] *Id.* at 2055, 2066.
[30] *McCormick v. City of Lawrence*, 03-2195-GTV-JPO, (D. Kan. Dec. 1, 2003), objection overruled by 2004 U.S. Dist. LEXIS 2157 (D. Kan Jan. 29, 2004),

motion.[31] However, as noted above, under these circumstances the deciding issues are timing and prejudice, and not futility.

Defendant also cites to the case of *Layne Christenson Co. v. Bro-Tech Corp.*[32] to argue a Rule 12(f) standard applies and Plaintiff bears "a demanding burden" to show adequate grounds to essentially strike its proposed defense.[33] (ECF No. 137 at 6.) Although Defendant is correct regarding the standard, the *Layne Christenson* case also made clear that "*absent prejudice to an opposing party*, courts should not strike a defense. Striking a defense should further the purpose of Rule 12(f) 'to minimize delay, prejudice and confusion by narrowing the issues for discovery and trial.'"[34] Here, as discussed above, permitting the addition of a new defense creates undue prejudice for Plaintiff and would increase the delay of this action. The *Layne Christensen* case therefore supports denial of the motion, for reasons of prejudice and delay.

Although the undersigned makes no findings on futility, Plaintiff does present convincing arguments regarding the potential futility of Defendant's affirmative defense.

---

[31] *See, e.g., Couser v. Somers*, No. 18-1221-JWB-GEB, 2020 WL 6742790, at *15 (D. Kan. Nov. 17, 2020), *report and recommendation adopted in part sub nom.*, No. 18-1221-JWB, 2021 WL 236080 (D. Kan. Jan. 25, 2021)  (noting "Defendants will have the later opportunity to file summary judgment motions to further clarify the claims presented"); and *Watkins v. Genesh, Inc.*, No. 19-2486-JAR-GEB, 2020 WL 5993641, at *4 (D. Kan. Oct. 9, 2020) ("Exercising its discretion and recognizing Defendant will have an opportunity to challenge the sufficiency of the new claims through a later dispositive motion, the Court will not deny Plaintiff's proposed amendment based on futility").

[32] *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *4 (D. Kan. Aug. 29, 2011).

[33] *Id.* at *6 (citing *Roderick Revocable Living Trust v. XTO Energy, Inc.,* No. 08–1330–JTM, 2009 WL 603641, at *2 (D. Kan. Mar.9, 2009); *accord Home Quest Mortg., L.L.C. v. Am. Family Mut. Ins. Co.,*393 F.Supp.2d 1096, 1100 (D. Kan.2005) (recognizing that movant has the burden)).

[34] *Id.* at *6 (internal citations omitted).

Although no "rigid formula" exists for determining when an employee qualifies for the "ministerial exception," the characteristics of the employees in both the *Our Lady* case and *Hosanna-Tabor* appear drastically different from the facts at hand. In those cases, the elementary school teachers covered under the exception were required to teach religion and worship and such was part of their performance reviews. "Each taught religion in the classroom, worshipped with her students, prayed with her students, and had her performance measured on religious bases."[35] Defendant offers no facts to suggest Plaintiff did, or was required to do, any of those things with the college athletes she coached.

Regardless of the doubts this Court harbors regarding the plausibility of Defendant's proposed defense, the Court finds this factor neutral for purposes of deciding the issue of amendment under these circumstances.

### D.    Conclusion on Amendment

On review of the Rule 15 factors, the balance of those factors weighs against amendment.   Prejudice is the most important factor here because discovery will be necessary to demonstrate whether Plaintiff would be covered under the "ministerial exception."   Additionally, without opining on the plausibility of the claim, the *Our Lady* opinion does not seem so drastically departed from *Hosanna-Tabor* that Defendant would not have been on notice for the life of this litigation that such a defense could be available to a Catholic university.   Defendant argues 'it is no surprise to either party that Newman is a Catholic university"—and the Court agrees.

---

[35] *Our Lady*, 140 S. Ct. at 2052.

Even with a good-faith belief that the law changed in its favor, Defendant waited nearly four months to file its motion. This case has had multiple delays, largely due to the ongoing disputes of the parties, and should have been concluding its pretrial conference (the fourth pretrial setting during the life of this case)[36] on the date of the motion hearing. And though Defendant argues "there is more than enough time for Plaintiff to seek discovery," as noted above, the discovery period has closed (with the exception of Plaintiff's rebuttal expert), discovery has already been protracted, and Plaintiff would be prejudiced by reopening discovery and again postponing the conclusion of this litigation.[37]

For the reasons of timeliness and prejudice to the non-moving party, the undersigned **RECOMMENDS DENIAL** of Defendant's motion to amend its answer.

**IT IS THEREFORE RECOMMENDED** pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rules 72.1.1(d) and 72.1.4 that Defendant's Motion for Leave to File an Amended Answer to Plaintiff's Complaint (**ECF No. 120**) be **DENIED**.

---

[36] *See* ECF No. 28 (setting pretrial conference for Jan. 21, 2020; ECF No. 61 (setting pretrial conference for May 13, 2020); ECF No. 112 (setting pretrial conference for Jan. 21, 2021); ECF No. 116 (resetting pretrial conference for Feb. 2, 2021 at the Court's request).

[37] *See, e.g.*, *Aerotech Res., Inc. v. Dodson Aviation, Inc.*, No. 00-2099-CM, 2001 WL 474302, at *4 (D. Kan. Apr. 23, 2001) (upholding the Magistrate Judge's denial of the motion to amend; finding "plaintiff would be unduly prejudiced if amendment were allowed at this stage of the litigation" and "[w]ere the court to allow amendment and to allow additional discovery on the proposed counterclaims, plaintiff would be required to expend time and effort to defend the new claims by reopening the discovery, and accordingly, the trial in this matter would be delayed." The court further noted, "The court finds no reason to doubt plaintiff's assertion that it would, in fact, need to conduct additional discovery to adequately defend against the proposed counterclaims. Even assuming plaintiff had been placed on notice of the potential amendments, it would not have been unreasonable for plaintiff to forgo discovery on these potential claims, as they had not been officially raised during the discovery period.")

**IT IS FURTHER ORDERED** that this Report and Recommendation be served electronically through the Court's CM/ECF system. Pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b)(2), and D. Kan. Rule 72.1.4 either party may file a written objection to the proposed recommendations with the clerk of the district court within fourteen (14) days after being served with a copy of this report and recommendation. Failure to make a timely objection waives appellate review of both factual and legal questions.[38]

## III.   Plaintiff's Motion for Extension of Rebuttal Deadline (ECF No. 149)

At the filing of her motion, Plaintiff asked to be permitted four additional weeks—until February 12, 2021—to submit her rebuttal expert disclosures. She argues Defendant's expert disclosed on January 8, 2021 actually dealt with a tangential issue addressed in other related litigation,[39] and Plaintiff acted diligently in quickly attempting to secure a rebuttal expert within the seven-day window provided by the most recent schedule. She argues the rebuttal expert reports are not dispositive to her claims, but rather Defendant's expert report related more to the other cases against Newman.[40]   (ECF No. 149 at 2.[41])  Plaintiff says she "solicited a potential rebuttal expert but he is not able

---

[38] *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

[39] Other Title IX litigation against defendant Newman was filed in this District but involves different plaintiffs, plaintiffs' counsel, and different assigned judges. *See Greenfield v. Newman Univ.*, No. 18-2655-HLT-TJJ (filed Dec. 3, 2018; closed Dec. 15, 2020); *Walker v. Newman Univ.*, No. 19-2005-HLT-TJJ (filed Jan. 3, 2019; closed Dec. 23, 2020). Although the parties have discussed the concurrent litigation at points throughout the life of this matter, the other litigation is not formally linked to this case nor a consideration to the Court in its decision-making.

[40] *See discussion* note 39.

[41] *See also* counsel's arguments at hearing. The February 2, 2021 motion hearing was recorded but not transcribed. (Zoom recording maintained in chambers' file). If any party wishes to

to prepare and author an expert report before mid-February due to his own work schedule." (*Id.*)  She does not intend to take the deposition of Defendant's expert and plans to cross-examine him at trial; but understands Defendant may wish to depose Plaintiff's rebuttal expert. According to the email attached to her motion, Defendant objected to this extension with a one-sentence email, noting only that Defendant "cannot agree to this extension." (*Id.* at 149-1.)

Rather than further conferral, Defendant responded with a formal opposition to this request for extension, which is very demonstrative of the disputes which have plagued this case. Without recognition of how its own motion has affected the schedule, Defendant suggests the Scheduling Order is not a "frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril."[42] (ECF No. 152 at 1.) Defendant argues Plaintiff failed to show good cause for extension and because Plaintiff did not identify her witness or provide information about the witness as required by Rule 26(a), she should not be allowed to use the information or witness to supply evidence on a motion or at trial under Fed. R. Civ. P. 37(c)(1). (ECF No. 152 at 2-3.)

The parties' curt pre-motion exchange on the issue begs the question whether the parties properly conferred under D. Kan. Rule 37.2, which seems highly unlikely given the briefing and arguments presented. Although this is not perhaps a substantive discovery dispute, it is a disagreement on the timing and allowance of discovery and the Court expects counsel to have fully conferred.  However, in its discretion and given the

---

purchase a written transcription, it may contact the chambers of the undersigned for more information.
[42] *Deghand v. Wal-Mart Stores*, 904 F. Supp. 1218, 1221 (D. Kan. 1995).

posture of the case and the arguments provided at the motion hearing, the Court opts to decide the issue.

This Court is well aware each party's position regarding deference to the scheduling order are notably flipped in the context of this motion, and understands even the Court's own position regarding adherence to the schedule may seem incongruous. But the Court views the two motions very differently and finds the request for additional time by Plaintiff does not impose a significant burden on this case. The Court is unimpressed with Defendant's lack of awareness of the delay caused by its own motion yet wanting to hold Plaintiff's feet to the fire.  In fact, Defendant reasonably asked to extend its own expert disclosure to January 8, 2021 (a 34-day extension), which is what initially pushed expert deadlines into January, and Plaintiff did not oppose that extension. (Order, ECF No. 131.)  Plaintiff had a very short window—just seven days—to disclose her rebuttal expert, and filed her motion to extend her rebuttal disclosure before the time to disclose expired, as is contemplated by D. Kan. Rule 6.1(a).

After discussion during the February 2, 2021 hearing, and in consideration of the above, the Court found good cause for Plaintiff's request and **GRANTED** Plaintiff's motion for extension.  The schedule in this case must be reconsidered in light of both motions considered herein.

Plaintiff is permitted until **March 5, 2021** in which to submit rebuttal expert designations.  Discovery will close on **March 26, 2021**.  A pretrial order will be due to chambers at [KSD_Birzer_Chambers@ksd.uscourts.gov](mailto:KSD_Birzer_Chambers@ksd.uscourts.gov) by **April 16, 2021**.  The Court

will postpone the setting of the pretrial conference and dispositive motion deadline pending the district judge's review of the denial of Defendant's motion to amend.

**IT IS SO ORDERED**.

Dated at Wichita, Kansas this 12th day of February, 2021.


 s/ Gwynne E. Birzer
GWYNNE E. BIRZER
United States Magistrate Judge