IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DESTINY CLARK,<br><br>    Plaintiff,<br><br>v.<br><br>NEWMAN UNIVERSITY, INC.,<br><br>    Defendant. | Case No.: 6:19-cv-01033-JWB-GEB |

**DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION**

  Defendant Newman University, Inc. ("Newman"), pursuant to Federal Rule of Civil Procedure 72(b)(2) and 28 U.S.C. § 636(b)(1)(C), hereby submits these objections to Magistrate Judge Gwynne E. Birzer's February 12, 2021, report and recommended denial of Newman's Motion for Leave to Amend its Answer to add a First Amendment religious freedom affirmative defense. *See* Docs. 155 & 156. Newman respectfully asserts that, contrary to the findings of the Magistrate, its Motion for Leave to Amend causes *no prejudice* to Plaintiff such that it should be denied. Newman acted timely to amend, the Magistrate's findings are incongruous, and the practices of this District – and our Magistrate – reveal that scheduling orders regularly allow for amended pleadings when four or less months remain in discovery. Plaintiff cannot be prejudiced because she had three months to conduct discovery on Newman's affirmative defense and did so. Newman, as a Catholic university, is the only party prejudiced by a recommended denial that nullifies its First Amendment religious freedoms. Therefore, the Magistrate's Report and Recommendation must be, respectfully, rejected. And, Newman's Motion for Leave to Amend its Answer to add a Religious Freedoms Restoration Act ("RFRA") affirmative defense should be granted. *See generally* Religious Freedoms Restoration Act, 42 U.S.C. ch. 21B § 2000bb, *et seq*.

**I.        INTRODUCTION**

Newman must be granted leave to add a RFRA affirmative defense to its Answer following the United States Supreme Court decision in *Our Lady of Guadalupe Sch. v. Morissey-Berru*, 140 S. Ct. 2049 (July 8, 2020) (heard with *St. James Sch. v. Biel*, Slip No. 19-348 (2020)).  "The First Amendment provides in part that 'Congress shall make no law … prohibiting the free exercise' of religion."  *First Baptist Church v. Kelly*, 455 F. Supp. 3d 1078, 2084 (D. Kan. 2020) (J., Broomes) (citing U.S. Const. amend. I.).  Congress may, of course, further protect religious freedoms through legislation like RFRA.  "RFRA operates as a kind of super statute, displacing the normal operation of federal laws."  *Bostock v. Clayton Cty*, 140 S. Ct. 1731, 1754 (June 15, 2020) **("[RFRA] might supersede Title VII's commands in appropriate cases**. . . . [O]ther employers in other cases may raise free exercise arguments that merit careful consideration . . . .") (J., Gorsuch) (emphasis ours).

Nearly 90 years ago, the Sisters of the Adorers of the Blood of Christ (the "Sisters") founded Newman on Catholic values and traditions that endure today.  *See* Newman Website, https://newmanu.edu/about-newman ("Founded in 1933, Newman University is grounded in Catholic values and traditions . . . ." and "Newman is a sponsored ministry of the Adorers of the Blood of Christ.").  Newman, by its Motion for Leave, intends to avail itself of the post-*Our Lady of Guadalupe* free exercise defenses within the "super statute," specifically the ministerial exception.  *Bostock*, 140 S. Ct. at 1754.  Discovery in this case reveals that Plaintiff's behavior as head volleyball coach often ran contrary to the behavior Newman expected of its employees.  Discovery also indicates Plaintiff knew of Newman's values.  *See, e.g.*, Exhibit A, Newman's Requests for Admissions to Plaintiff, at p. 1.  The discovery of this information provides Newman alterative and legitimate grounds for disciplining and/or terminating Plaintiff before she voluntarily left Newman.  As Newman argues in briefing, the RFRA defense blossoms out of the

previously asserted after-acquired evidence defense. *See* Doc. 121. Newman must be allowed to present its religious freedoms defense to judge and jury.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

### A.  Plaintiff's Employment at Newman and Her Subsequent Lawsuit

Newman is an NCAA Division II Catholic university in Wichita, Kansas. Plaintiff is a former employee of Newman where she served as women's head volleyball coach. Plaintiff's tenure at Newman was marked by discord with her colleagues, her student athletes, and other students. Plaintiff voluntarily left Newman in June 2018 to pursue a more fruitful job opportunity. After eight months at her new job, Plaintiff filed this lawsuit against her former employer. She alleges that she was treated differently than male coaches and that her team received unequal treatment regarding practice times at the gym. Notably, no other sports teams or, specifically, female volleyball players join Plaintiff's specious complaints. Plaintiff's student athletes do have various documented complaints about her performance as head coach, including describing her conduct as bullying. Newman vehemently denies Plaintiff's allegations, and nearly half of Plaintiff's claims failed Newman's Rule 12 motion.

### B.  Newman's Religious Freedoms Affirmative Defense Chronology

The Magistrate's Report and Recommendation provides a clear timeline. Doc. 155; 156. This Court entered its first scheduling order in June 2019. It provided an amended pleadings deadline of July 19, 2019. *See* Doc. 28. The Court revised the order on December 20, 2019 and again on February 25, 2020. *See* Docs. 61; 85, respectively. The Parties did not seek – and the Court did not set – a new amended pleadings deadline. On June 22, 2020, this Court entered a phased discovery order that further altered the operative scheduling order. *See* Doc. 112.

In summer 2020, the High Court was active in religious freedoms jurisprudence. On June 15, 2020, the United States Supreme Court decided *Bostock* wherein Judge Gorsuch, in dicta,

4846-9109-2701.1                                    3

explained that RFRA could have the effect of displacing federal laws like Title VII. *See Bostock v. Clayton Cty*, 140 S. Ct. 1731 (2020).  Several circuits have corroborated Justice Gorsuch's statement. *See, e.g.*, *Hawkins v. New York Annual Conf. of the United Methodist Church*, 516 F. Supp. 2d 225 (E.D.N.Y. 2007).  On July 8, 2020, the United States Supreme Court decided *Our Lady of Guadalupe* where the Supreme Court held that the ministerial exception applies to more than simply ministers and may – depending on the facts and circumstances – expand to other vital roles at a religious institution. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2063–64 (July 8, 2020) ("Requiring the use of the title would constitute impermissible discrimination, and this problem cannot be solved simply by including positions that are thought to be the counterparts of 'ministers' . . . .").  Newman took Plaintiff's deposition on September 10, 2020.  Newman first sought Plaintiff's input on its amended answer on October 15, 2020— approximately three months after *Our Lady of Guadalupe*.  On October 16, 2020, Newman followed up on this request, and Plaintiff's counsel requested Newman's authority on the RFRA defense.  Newman's counsel immediately provided the recent Supreme Court authority.  On October 22, 2020, Newman's counsel again followed-up with Plaintiff's counsel seeking consent or opposition.  Plaintiff opposed Newman's motion.  Newman prepared its Motion for Leave to Amend and Memorandum in Support (Doc. 120; 121) and filed them on November 5, 2020.  The matter was fully briefed by December 3, 2020 but was not argued until two months later.

Consistent with the Court's Scheduling Order [Doc. 131], Newman disclosed its expert on January 8, 2021; rebuttal expert disclosures were due on January 15, 2021; and all discovery was set to close on January 22, 2021.  Plaintiff failed to meet her rebuttal expert deadline.  Instead, she moved for an extension.  The magistrate set both the motion for leave to amend and motion for extension of time to identify rebuttal expert for hearing on January 27, 2021.  At that hearing, the Magistrate recommended denial of Newman's Motion for Leave to Amend for prejudice due to

timeliness and granted Plaintiff's extension of time regarding rebuttal expert.  This Report and Recommendation extended the close of discovery from January 22, 2021 to March 26, 2021.

The time between Plaintiff's first notice of Newman's RFRA affirmative defense and the close of discovery was three months and one week (October 15, 2020 to January 22, 2021).  After the Report and Recommendation, the time between Plaintiff's first notice of RFRA defense and close of discovery is **five months and two-and-a-half weeks** (October 15, 2020 to March 26, 2021).  With either three months or over five months of discovery, there can be no prejudice for timeliness.  The recommendation should be rejected, and Newman's motion for leave granted.

### III.    APPLICABLE STANDARD OF REVIEW

"Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate for a report and recommendation."  Fed. R. Civ. P. 72(b).  The parties may object to a magistrate judge's recommendation within 14 days of its filing.  Fed. R. Civ. P. 72(b)(2).  Magistrate Judge Birzer filed her Report and Recommendation on February 12, 2021.  Docs. 155; 156.  Newman's objections are timely.

When the issue objected to is dispositive, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions."  Fed. R. Civ. P. 72(b)(3).  While Newman appreciates the importance of a magistrate's review and ruling, this Court's *de novo* review mandates fresh consideration of those issues to which specific objections have been made. *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1464 (10th Cir. 1988) ("In order to conduct a *de novo* review a court 'should make an independent determination of the issues . . .;' [it] 'is not to give any special weight to the [prior] determination' . . . ." (citing *U.S. v. First City Nat. Bank*, 386 U.S. 361, 368 (1967))).  "The magistrate acts subsidiary to and only in aid of the district court.

Thereafter, the entire process takes place under the district court's control and jurisdiction." *Id.* (citing *U.S. v. Raddatz*, 447 U.S. 667 (1980)).

Respectfully, Newman prays the District Court review *de novo* Newman's motion for leave and its objections to the Magistrate's Report and Recommendations, with careful consideration to Newman's First Amendment rights.

## IV.   ARGUMENT AND AUTHORITY

The Magistrate's Report and Recommendation prescribes denial of Newman's Motion for Leave to Amend on two grounds. First, the Magistrate found Newman's Motion untimely following the United States Supreme Court's decision in *Our Lady of Guadalupe*. Second, and most importantly, the Magistrate believes Plaintiff will be prejudiced by the discovery schedule if forced to rebut Newman's affirmative defense. Assuredly, Newman is the only party to suffer incurable prejudice if its First Amendment rights are abrogated.[1]

### A.   Newman's Acted Timely to Amend its Answer.

Newman put Plaintiff on notice of its intent to file an amended answer approximately three months after the ruling expanding the ministerial exception and three months before the close of discovery. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2063–64 (July 8, 2020). It prepared and filed its motion two weeks after Plaintiff provided her notice of opposition. Newman understands that a motion to amend is subject to denial where a party seeking amendment

---

[1] The Magistrate's Report and Recommendations also discussed the futility of Newman's RFRA defense. However, the Magistrate explicitly noted that her decision did not turn on futility. Docs. 155; 156, at pp. 16–17 ("Although the undersigned makes no findings on futility . . . ." and "Regardless of the doubts this Court harbors regarding the plausibility of Defendant's proposed defense, the Court finds this factor neutral for purposes of deciding the issue of amendment under these circumstances.") Therefore, Newman will not refer to the futility analysis for the purposes of the District's *de novo* review. For the purposes of futility, any challenge to an affirmative defense is governed by Rule 12(f), and Plaintiff must carry "a demanding burden" to show adequate grounds to strike this First Amendment defense. *Layne Christensen Co. v. Bro-Tech Corp.*, U.S. Dist. LEXIS 96368 (D. Kan. 2011).

knows or should have known of the facts upon which the proposed amendment is based in his original pleading, but fails to do so. *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 2017 (10th Cir. 1994). However, this Circuit only denies motions for leave in severe delay circumstances. *See, e.g.*, *Castanon v. Cathey*, 976 F.3d 1136, 1144 (10th Cir. 2020) ("[Plaintiffs] had ample time to amend their complaint, but they waited to seek amendment until more than fourteen months after the removal . . . ."). Of course the rule states "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). This District regularly allows *more than four months* for amendments made after knowledge of the facts giving rise to the need to amend. *See, e.g.*, *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1207 (10th Cir. 2006) (six months not undue delay); *Boardwalk Apts., L.C. v. State Auto Prop. & Cas. Ins. Co.*, U.S. Dist. LEXIS 102301 (D. Kan. 2012) (allowing amendment before dispositive motion deadline). For example, in *Bank Midwest v. R.F. Fisher Elec. Co.*, this Court allowed six months between knowledge and the motion for leave. *Bank Midwest v. R.F. Fisher Elec. Co.*, U.S. Dist. LEXIS 661, *14 (D. Kan. 2021) (J., Birzer). In this Circuit, the reasons for the delay are important. *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).

A delay of roughly three months between notice to Plaintiff and four months to file is not, on its own, worthy of denial. This District and Circuit allow amendments as long as six months after the triggering event. Here, Newman learned of the expansion to the RFRA ministerial exception shortly after the Supreme Court's ruling on July 8, 2020.

In July and August, legal scholars and practitioners were evaluating the impact of both *Our Lady of Guadalupe* and *St. James School*. Newman took Plaintiff's deposition on September 10, 2020. Between July and October, and across cases, one of Newman's co-lead counsel prepped 17 witnesses for depositions; attended 20 depositions; attended 2 mediations; and handled the normal course of business, including hearings and client meetings. Many of these depositions took place

in companion cases pending in this district.[2] During the same time frame, Newman's other co-lead counsel attended 11 mediations and 14 depositions, in addition to the ordinary course of practice. Newman and its counsel also needed time to assess the defense and meaningfully discuss before pursuing it. Newman sought Plaintiff's consent on October 15, and Plaintiff took seven days to oppose. At its earliest opportunity, and in the middle of discovery (three months remaining), Newman moved to amend. *See Conley v. Gibson*, 355 U.S. 41, 48 (1957) ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."). Most importantly, however, because the deadline to amend was nearly a year before the *Our Lady of Guadalupe* ruling, Newman could not have complied with the Court's deadline in any event. Newman acted with diligence at all times. The Magistrate notes in its Report and Recommendation, however, that timeliness is not the most important factor. *See* Doc. 155; 156. The most important factor in the Magistrate's recommendation is prejudice to Plaintiff. *Id.*, at p. 13.

B.   Plaintiff Cannot be Prejudiced by Newman's Amendment.

The Magistrate's keystone in recommending denial of Newman's First Amendment defense is prejudice: "Plaintiff would be prejudiced by reopening discovery and again postponing the conclusion of this litigation." Doc. 155; 156, at p. 18. Notwithstanding the unsupported prejudice, the Magistrate extended discovery by over two additional months to accommodate Plaintiff's request. This reasoning is at odds with itself. Further, there can be no prejudice under these facts because this district regularly schedules a close of discovery four or less months after

---

[2] *Greenfield v. Newman University, Inc.*, Case No.: 2:18-cv-2655-DDC-TJJ; *Walker v. Newman University, Inc.*, Case No.: 2:19-cv-02005-DDC-TJJ.

the motion to amend deadline.  For both of these reasons, prejudice to Plaintiff is wholly absent. Newman's Motion for Leave to add its First Amendment defense should be granted.

1. *The Magistrate's Findings on Prejudice are Incongruous and Unsupported.*

Prejudice is the most important factor when weighing a motion for leave to amend out of time.  *Layne Christensen Co. v. Bro-Tech Corp.*, U.S. Dist. LEXIS 96368 (D. Kan. 2011).  In recommending denial, the Magistrate asserts that not enough time remains in the discovery period and that Plaintiff will be prejudiced by reopening or extending discovery for RFRA.

As a preliminary matter, Plaintiff will not be prejudiced because she does not bear the burden of proving Newman's affirmative defense.  *Aquila, Inc. v. C.W. Mining*, 545 F.3d 1258, 1264 (10th Cir. 2008) (holding affirmative defenses rest upon the defendant as the asserting party). Further, **Plaintiff already sought discovery on the RFRA affirmative defense**.  Of note, prior to Newman filing its Motion for Leave to Amend, Plaintiff had taken *no depositions* in this case. While the instant motion was pending, Plaintiff took numerous depositions – including Newman's then-President, Dr. Noreen Carrocci.  Plaintiff also issued written discovery to Newman.  On December 4, 2020, the day after the instant motion was fully briefed, Plaintiff asked Dr. Carrocci about Newman's Catholic mission in the context of athletics:

> **Q. [by Ms. Hill] What is your general philosophy, I guess, in terms of what's the mission of an institution of higher learning, specifically a four-year university with graduate school program?**
>
> A.     We are a Catholic university named for John Henry Cardinal Newman and founded by the Adorers of the Blood of Christ for the purpose of empowering graduates to transform society.
>
> **Q.     Is that the mission statement?**
>
> A.     Yep.
>
> **Q.     And how did the program of athletics play into that mission?**

> A. Very well, actually. Division II NCAA is – has a commitment to service, as we did at Newman, and they want the well-rounded student athlete who gets a good education, is certainly committed to their sport, but also to their community, and I think our athletic department did a very good job of serving the community, both the Newman community as well as the Wichita community.

Exhibit B, Dep. of Noreen Carrocci, at 76:23–77:20. And,

> **Q. [by Ms. Hill] Describe for me the value you believe the coaches added to Newman University.**
>
> A. They are very much value added. They – they're good people who provide good leadership to their students and they uphold the mission of the university.

Exhibit B, Dep. of Noreen Carrocci, at 102:2–7. By Dr. Carrocci's sworn testimony, the Catholic mission of Newman was imputed to athletics and Plaintiff's job as head volleyball coach. Even if Plaintiff needed more discovery, she had/has a total of five months to seek it. Following Dr. Carrocci's deposition on December 4, 2020, Plaintiff took an additional six depositions. She had every opportunity to explore the basis for Newman's RFRA defense further, if she so desired.

Newman bears the burden of proving this defense and represents that it needs no further discovery to bolster it. In oral argument, Plaintiff's counsel stated that Plaintiff was prejudiced because, if she knew of the RFRA defense, Plaintiff's counsel could have prepared her better for her deposition. Newman does not understand how counsel's preparation would affect Plaintiff's sworn testimony. Newman did not ask any questions of Plaintiff on RFRA at her deposition, but Plaintiff *did* inquire about RFRA in her depositions of Newman witnesses. By Newman's employee handbook, its student athlete handbook, and its hiring practices, it is clear that Catholic ideologies are imputed to important leadership employees, like head coaches. *See* Doc. 137 ("**Every new employee at Newman undergoes a mandatory orientation with a Sister on the Sister's Mission as part of the overall orientation**." (emphasis ours)); Exhibit C to Doc. 137, Student Athlete Handbook, at p. 3 ("**Newman University is an environment rooted in Judeo-Christian principles and founded on the Catholic tradition of its sponsor, the Adorers of the**

**Blood of Christ**." (emphasis ours)); Exhibit A to Doc. 140, Employee Handbook, at p. 4 ("Newman University is a Catholic university named for John Henry Cardinal Newman and founded by the Adorers of the Blood of Christ for the purpose of empowering graduates to transform society.") (and further discussing Catholic core values at Newman). Former Newman President, Dr. Carrocci testified to the importance of Newman's mission-employee orientation sessions, in which Plaintiff participated:

> **Q. [by Ms. Hill] Would you have attended like a new employee orientation or anything like that?**
>
> A.     Well, yeah. Yeah. Sister Charlotte's mission orientation sessions, the cabinet always went to those, and we didn't stay for the whole session, but we would introduce ourselves among respective areas of the university, and those were done in small groups, small group sessions, several times a year.
>
> **Q.     And she [Plaintiff] was hired in the spring or late spring of 2015, to start coaching in the fall. When do you think she would have gone through orientation?**
>
> A.     She would probably have done an orientation that August, a mission orientation, usually, unless she was there early enough in the spring to have done the last one of that year. I – I can't tell you which one she did, but it would have been either in the spring when she came or in August.

Exhibit B, Dep. of Noreen Carrocci, 128:24–129:10.

Despite Plaintiff seeking discovery on RFRA, and a five month discovery period remaining, the Magistrate found prejudice. *See* Docs. 155; 156 ("Prejudice is the most important factor here because discovery will be necessary to demonstrate whether Plaintiff would be covered under the 'ministerial exception.'"). The Magistrate further noted "the discovery period has closed (with the exception of Plaintiff's rebuttal expert), discovery has already been protracted, and **Plaintiff would be prejudiced by reopening discovery and again postponing the conclusion of this litigation**." *Id.*, at p. 18 (emphasis ours). On the next page, however, the Magistrate reopens discovery, postpones deadlines, and confers on Plaintiff a **48-day extension** of her Rebuttal Expert Deadline and a **64-day extension** of discovery. All told, from notice of the RFRA

defense to the new close of discovery, Plaintiff had/has **161 days** to seek discovery on Newman's affirmative defense. Plaintiff sought discovery on RFRA. Newman cannot fathom how five months of discovery following notice of a new affirmative defense (of which Newman bears the burden) can cause such extreme prejudice to Plaintiff that Newman's First Amendment rights should be truncated. On these grounds alone, the District Court should reject the recommended denial.

2. *This District Regularly Permits Four or Less Months of Discovery Following a Motion to Amend Deadline.*

This District commonly allows four or less months of discovery following the motion to amend pleadings deadline without prejudice to any party. If four or less months of discovery is sufficient for the District's common practice, Plaintiff cannot be prejudiced by having five months to complete discovery following notice of a single, affirmative defense. In *Lister v. Western Indus. Corp.*, Magistrate Birzer ordered a Motion to Amend deadline of August 10, 2018 and a close of discovery deadline of November 30, 2018—3 months and 20 days of discovery following amended pleadings. *See* Doc. 40, *Lister v. Western Indus. Corp.*, Case No.: 6:17-cv-01204-EFM-GEB. In *Vogt v. City of Hays*, Magistrate Birzer ordered a Motion to Amend deadline of May 3, 2017 and a close of discovery deadline of August 30, 2017—3 months and 27 days of discovery following amended pleadings. *See* Doc. 44, *Vogt v. City of Hays*, Case No.: 6:15-cv-01150-JTM-GEB. In *Sizewise Rentals, LLC v. Dimensions Medical Supply Group, Inc.*, Magistrate Birzer ordered a Motion to Amend deadline of November 3, 2015 and a close of discovery deadline of January 15, 2016—2 months and 12 days of discovery following amended pleadings. *See* Doc. 12, *Sizewise Rentals, LLC v. Dimensions Medical Supply Group, Inc.*, Case No.: 2:15-cv-09113-GEB. In *Prather v. First Student, Inc.*, Magistrate Birzer ordered a Motion to Amend deadline of August 8, 2018 and a close of discovery deadline of November 30, 2018—3 months and 22 days of discovery

following amended pleadings. *See* Doc. 14, *Prather v. First Student, Inc.*, Case No.: 2:18-cv-02178-CM-GEB.

In our case, Newman put Plaintiff on notice of its Motion to Amend on October 15, 2020. The close of discovery was January 22, 2021. Plaintiff had 3 months and 7 days to conduct discovery on a single, new affirmative defense—and she did so. Following the Magistrate's Report and Recommendation, Plaintiff received more time for discovery on Newman's RFRA defense—5 months and 14 days. Three or five months of discovery following notice of amended pleadings cannot constitute prejudice when this District – and this Magistrate – regularly gives less than four months in initial scheduling orders. The Magistrate notes, "though Defendant argues 'there is more than enough time for Plaintiff to seek discovery,' as noted above, the discovery period has closed (with the exception of Plaintiff's rebuttal expert), discovery has already been protracted, and Plaintiff would be prejudiced by reopening discovery and again postponing the conclusion of this litigation." Docs. 155; 156. As quoted above, it is clear Plaintiff sought discovery on RFRA. She asked Newman's President about the religious mission in athletics. She took seven depositions after this matter was fully briefed. According to this Court's practices in extrinsic scheduling orders, there is more than enough time for Plaintiff to seek *even more* discovery on RFRA, and the discovery period has been duly extended for Plaintiff's and her expert's convenience. The recommended denial should be rejected because the Magistrate's adherence to the schedule is inharmonious and Plaintiff lacks any cognizable prejudice. *See* Docs. 155; 156, at p. 21 (". . . the Court's own position regarding adherence to the schedule may seem incongruous."). Newman's Motion for Leave to Amend its Answer on First Amendment grounds should be granted.

### C.     <u>Newman is the Only Party to Suffer Prejudice</u>

The Magistrate's recommended denial of Newman's Motion for Leave to Amend, itself, curtails RFRA. RFRA provides that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability," like Federal Rules of Civil Procedure 15 and 16. *See* 42 U.S.C. § 2000bb-1(a). Courts have interpreted RFRA as an amendment of existing federal statutes and thus a constitutional exercise of Congressional authority. *See, e.g.*, *In re Young*, 141 F.3d 854 (8th Cir. 1998); *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455, 470 (D.C. Cir. 1996) (pre-*Our Lady of Guadalupe* holding that RFRA precluded application of Title VII to plaintiff whose position was the functional equivalent to a minister).

If federal laws like Title VII and the Age Discrimination in Employment Act, 42 U.S.C. § 623, *et seq.*, can be displaced by RFRA, certainly the Federal Rules may be displaced to allow a religious institution to merely assert a defense under the First Amendment. *See Hawkins v. New York Annual Conf. of the United Methodist Church*, 516 F. Supp. 2d 225 (E.D.N.Y. 2007) (RFRA bars ADEA because government's interest in prohibiting age discrimination was not compelling in light of institutions right to employ ministers of their choosing). The least restrictive means of applying the Federal Rules of Civil Procedure to the facts surrounding Newman's Motion for Leave to Amend to add a RFRA defense must include *allowing the defense* for a determination on the merits. "[C]ourts prefer to decide cases on their merits rather than technicalities." *Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 456 (10th Cir. 1982). Rules 15 and 16 must not be allowed to foreclose defenses available under the United States Constitution, particularly when the defense was not available under applicable law at the time of the initial pleading. It was not until July 8, 2020 that the U.S. Supreme Court's decision in *Our Lady of Guadalupe* opened the door for Newman to raise its RFRA defense in this case—nearly one year after Newman's deadline to amend its answer expired. Newman's Motion for Leave to Amend must be granted.

## V.     CONCLUSION

Newman is a Catholic university entitled to assert affirmative defenses in accord with the First Amendment and RFRA. RFRA prohibits the government from substantially burdening an institution's exercise of religion, even through a generally applicable rule. Newman timely moved to amend to add a RFRA defense following a United States Supreme Court ruling that expanded the previously recognized ministerial exception. With several months left in discovery, Plaintiff questioned Newman's then-President on RFRA topics and sufficient time remained for her to seek additional discovery on Newman's new affirmative defense. Notwithstanding Plaintiff's discovery on RFRA and the five-month discovery period, the Magistrate determined that Plaintiff was prejudiced because "the discovery period has closed (with the exception of Plaintiff's rebuttal expert), discovery has already been protracted, and Plaintiff would be prejudiced by reopening discovery and again postponing the conclusion of this litigation." Doc. 155; 156. Immediately following this determination of prejudice and recommended denial of Newman's First Amendment rights, the Magistrate extended the discovery period for the convenience of Plaintiff. Discovery has been protracted; however, Plaintiff sought discovery on Newman's RFRA defense and the discovery period remains open. Any plausible prejudice to Plaintiff is mooted by the Magistrate's order extending discovery. *See* Docs. 155; 156, at p. 21 ("Plaintiff is permitted until **March 5, 2021** in which to submit rebuttal expert designations. Discovery will close on **March 26, 2021**."). The only party to be prejudiced by denying the instant motion for leave to amend is Newman, and the prejudice is incurable. The Federal Rules of Civil Procedure serve the just, speedy, and inexpensive determination of civil actions. They do not serve to blockade litigants' constitutional rights. The First Amendment to the United States Constitution, the Religious Freedoms Restoration Act, and the Federal Rules of Civil Procedure call for Newman's Motion for Leave to

Amend its Answer to be granted. Justice requires the rejection of the Magistrate's Report and Recommendation and a grant of Newman's Motion.

WHEREFORE, Defendant Newman University, Inc. respectfully requests the District Court enter an Order rejecting the Magistrate's Report and Recommendations [Docs. 155 & 156] and grant Defendant Newman University leave to file an Amended Answer to Plaintiff's Complaint and accepting as filed its Amended Answer [Doc. 121, Exhibit A] as of the date of that Order.

/s/ Colby M. Everett
Alan L. Rupe, KS# 08914
Nanette Turner Kalcik, KS #24030
Ellen C. Rudolph, KS #27945
Colby Millard Everett, KS #28279
LEWIS BRISBOIS BISGAARD & SMITH LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, Kansas 67206
Telephone:  (316) 609-7900
Facsimile:   (316) 462-5746
alan.rupe@lewisbrisbois.com
nanette.kalcik@lewisbrisbois.com
ellen.rudolph@lewisbrisbois.com
colby.everett@lewisbrisbois.com

*Attorneys for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on February 24, 2021, I filed the above Defendant's Objection to Report and Recommendation using the Court's CM/ECF system which will send notification to all counsel of record.

/s/ Colby M. Everett
Colby M. Everett