IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| DESTINY CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 19-1033 |
| ) | |
| NEWMAN UNIVERSITY, INC. ) | |
| Defendants, ) | |
| ) | |

**RESPONSE TO DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION**

COMES NOW Plaintiff, Destiny Clark, by and through her attorneys, Jennifer M. Hill and Corey M. Adams of McDonald Tinker PA, and submits the following response to Defendant's Objection to Report and Recommendation. For the reasons stated herein, Defendant's objection should be overruled.

I.      **INTRODUCTION**

This lawsuit arises out of claims by the former employee of Newman University, Inc. ("Newman") regarding Newman's violations of, among other laws, Title VII, Title IX, and the Equal Pay Act. Specific to Ms. Clark, she alleges that Newman University violated Title VII of the Civil Rights Act of 1964, the Equal Pay Act pursuant to 29 U.S.C. § 206(d), Title IX of Education Amendments of 1972, and Kansas common law. As to the federal claims, Ms. Clark claims that, by subjecting Ms. Clark to discrimination on the basis of her gender, retaliation for filing a Title IX complaint up to and including her apparent "suspension" during the Title IX investigation, the apparent adoption of the conduct of Ms. Clark's supervisor, and the continuing hostility and blatant unprofessionalism she was subjected to daily which constitute a hostile work environment, Defendant is liable under these federal statutes.

Ms. Clark was employed by Newman for nearly three years as the head volleyball coach and the unpaid strength and conditioning coach. Ms. Clark was awarded "Coach of the Year" the first two years of her employment. Never in any documentation, allegations, pleadings, or other evidence to date has Ms. Clark's character, her interaction with the Catholic church and Catholic faith or other religious issues been related to the prosecution or defense of her claims. Catholic values and traditions are not mentioned in her evaluations, coaching emails from her supervisors or other evidence in the record. There is no evidence in the record that Defendant can or will demonstrate that Ms. Clarks conduct as a volleyball coach violates any doctrine of the Catholic faith.

Discovery in this lawsuit began in May of 2019. Since that time, the parties have tirelessly engaged in extensive discovery. As noted in the Court's Memorandum and Order (Doc. 156), the parties engaged in numerous Court hearings regarding discovery throughout the beginning and middle of 2020. Defendant first sought agreement from Plaintiff's counsel to add an affirmative defense under the Religious Freedom Restoration Act ("RFRA") on October 15, 2020, roughly 16 months after discovery opened in this case, and nearly 15 months after the deadline to amend a pleading had passed. This request came after over a year of multiple rounds of request for documents, interrogatories, and request for admissions. In that time, Plaintiff's deposition had been taken, and the Plaintiff was aggressively attempting to set the deposition of several defense witnesses, which took over two months to finalize. At that time, the discovery deadline was January 8, 2021, and the parties seemed able to make that deadline.

Defendant's expert disclosure was set for December 4, 2020. However, after request from Defendant's counsel to extend that disclosure deadline a month, the parties agreed to extend Defendant's expert disclosure deadline to January 8, 2021 (the day discovery was set to close). It

2

is true that in the Court's Memorandum and Order (Doc. 156), discovery was extended to give Plaintiff time to serve her expert disclosure. However, that was made necessary only due to the fact that Defendant had extended their expert disclosure deadline, and refused to reciprocate a short extension to Plaintiff for her expert disclosure, making necessary over a month of additional motion practice. All things considered, Plaintiff's discovery in the case had concluded on January 8, 2021, except for her unanticipated need for the retainer of a rebuttal expert.

Defendant passionately argues that it sought to amend its affirmative defenses just over 3 months after it was on notice that the RFRA defense existed. This argument, however, is meritless because the RFRA defense has existed in its current form at least since 2012 when the Supreme Court's decision in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 185, 132 S. Ct. 694, 704, 181 L. Ed. 2d 650 (2012). Accordingly, Defendant had sufficient notice of the RFRA defense well before it originally answered Plaintiff's Complaint, and certainly well before the deadline to amend pleadings had passed.

Defendant has not acted prudently or reasonably in adding its affirmative defense under RFRA. Instead, if the amendment were allowed, Defendant would be given the opportunity to tactically drop a complete defense to all of Plaintiff's claims on the eve of the close of discovery. Certainly, Plaintiff was not given the opportunity to fully explore the defense during the roughly 16 months of discovery that had already occurred. For this reason alone, Defendant's objection should be overruled.

## II.    ARGUMENTS AND AUTHORITIES

### 1. Standard of Review

Defendant argues its Motion to Amend should be governed by Rule 15 of the Federal Rules of Civil Procedure. This Rule states in relevant part:

> **(a) Amendments Before Trial.**
>
> > **(2) *Other Amendments.*** In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires.

FED. R. CIV. PRO., R. 15 (a)(2).

However, as this Court recently noted in *Schlup v. Depositors Ins. Co.,* No. 19-2095-HLT-GEB, 2020 WL 5094709, at *12 (D. Kan. Aug. 28, 2020), "when a proposed amendment is offered after the deadline to amend pleadings has passed, Fed. R. Civ. P. 16(b)(4) is implicated." Rule 16 relates to the pretrial conference and management of the schedule for the case. Specifically, Rule 16(b)(4) states:

> **(b) Scheduling.**
>
> > **(4) *Modifying a Schedule.*** A schedule may be modified only for good cause and with the judge's consent.

FED. R. CIV. PRO., R. 16 (b)(4).

Again, based on this court's analysis in *Schlup*, it is noted that:

> When considering a motion to amend the pleadings filed past the scheduling order deadline, "judges in this District have consistently applied a two-step analysis based on both Rule 16(b) and Rule 15(a)." In such cases, the court "first determines whether the moving party has established good cause within the meaning of Rule 16(b)(4) so as to justify allowing the untimely motion." Only after finding good cause has been shown will the court proceed to the second step and evaluate whether the broader Rule 15(a) standard for amendment has been satisfied.

*Schlup,* No. 19-2095-HLT-GEB, 2020 WL 5094709, at *12.

2. **Good Cause**

Defendant claims that the Supreme Court of the United States "extensively expanded" what is called the "ministerial exception," a defense grounded in RFRA, which bars certain employment discrimination claims. Defendant's claim that the Supreme Court "extensively expanded" the ministerial exception is false.

4

Absent showing that new case law controls this case, Defendant utterly fails to establish any "good cause" to allow its requested amendment. As this court noted in *Schlup*, Rule 16(b)(4) requires Defendant to "show that the amendment deadline could not have been met even if it had acted with due diligence." Further, a lack of prejudice to the opposing party is sufficient to establish "good cause".

RFRA has been federal law since 1993. It's implication in employment litigation when the employer is a religious institution has similarly been at issue for decades. The recent decision *Our Lady of Guadalupe Sch.* did not change the RFRA defense, but instead reversed Ninth Circuit decisions that improperly applied the 2012 case *Hosanna–Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 188, 132 S.Ct. 694, 181 L.Ed.2d 650 (2012). Indeed, the Supreme Court in *Our Lady of Guadalupe Sch.* clearly stated on multiple occasions that the plaintiffs there "qualify for the exemption we recognized in *Hosanna-Tabor*." *Id*. at 2066. The defense was **already** recognized in the *Hosanna-Tabor* decision.

Nothing about the *Our Lady of Guadalupe Sch.* case allows a new wholesale attack of Ms. Clark's character apparently planned by Defendant. There is absolutely no "good cause" available in this case because the *Our Lady of Guadalupe Sch.* doesn't change the law or defenses that were available to the Defendant's prior to the issuance of the decision.

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Among other things, the First Amendment protects the right of churches and other religious institutions to decide matters of faith and doctrine without court intrusion. It is true that this doctrine has been well established in Supreme Court rulings. *See Hosanna-Tabor Evangelical*

*Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 185, 132 S. Ct. 694, 704, 181 L. Ed. 2d 650 (2012).

Rooted in the religion clauses of the First Amendment, the ministerial exception "precludes application of [employment discrimination laws] to claims concerning the employment relationship between a religious institution and its ministers." *Hosanna–Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 188, 132 S.Ct. 694, 181 L.Ed.2d 650 (2012) (collecting cases); *see also, e.g.*, *E.E.O.C. v. Catholic Univ. of Am.*, 83 F.3d 455, 461 (D.C. Cir. 1996) (stating that the ministerial exception "precludes civil courts from adjudicating employment discrimination suits by ministers against the church or religious institution employing them"). As stated by courts across the country, church must "not be constrained in its dealings with [ministers] by employment laws that would interfere with the church's internal management, including antidiscrimination laws." *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1040 (7th Cir. 2006), *abrogated in part on other grounds by Hosanna–Tabor*, 565 U.S. at 195 n.4, 132 S.Ct. 694. The ministerial exception was recognized to preserve a church's independent authority in matters involving the employment of important positions within a religious organization. *See id*. Recently, the Supreme Court of the United States in *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2061, 207 L. Ed. 2d 870 (2020) readdressed this already firmly established doctrine.

In the recent Supreme Court case, *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2066, 207 L. Ed. 2d 870 (2020), the Court looked to its prior ruling in *Hosanna-Tabor*, where a kindergarten and fourth grade teacher at an Evangelical Lutheran school filed suit in federal court claiming that she had been discharged because of a disability, in violation of the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12112(a). In *Hosanna-Tabor*,

decided in 2012, the school responded that the real reason for the plaintiff's dismissal was her violation of the Lutheran doctrine that disputes should be resolved internally and not by going to outside authorities. The Supreme Court of the United States held that her suit was barred by the ministerial exception and noted that it "concern[ed] government interference with an internal church decision that affects the faith and mission of the church." *Hosanna-Tabor*, 565 U.S. at 190, 132 S.Ct. 694. Although the Court declined "to adopt a rigid formula for deciding when an employee qualifies as a minister," the Court noted that the facts of the plaintiff's employment were "enough for us to conclude, in this our first case involving the ministerial exception, that the exception covers [plaintiff], given all the circumstances of her employment." *Id.*, at 190–191. The Court in *Hosanna-Tabor* identified 4 factors that led to their decision: (1) that her church had given plaintiff the title of "minister, with a role distinct from that of most of its members"; (2) plaintiff's position "reflected a significant degree of religious training followed by a formal process of commissioning"; (3) "[plaintiff] held herself out as a minister of the Church by accepting the formal call to religious service, according to its terms," and by claiming certain tax benefits; and (4) "[plaintiff's] job duties reflected a role in conveying the Church's message and carrying out its mission." *Id*. at 191-192.

      In *Our Lady of Guadalupe Sch.*, the Supreme Court was tasked to determine whether the Ninth Circuit erred in two separate cases in which it held that the ministerial exception did not apply. *Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2066. In the case, two teachers, both grade-school teachers, were terminated for different reasons. One sued under the ADA and the other sued under the ADEA. Both taught all subjects for their respective grade, including religion. Their teaching contracts stated that they were to lead the students in their faith. *Id*.

7

The plaintiffs in those cases argued for a rigid test in determining whether the ministerial exception applied, arguing that courts should begin by deciding whether the first three circumstances—a ministerial title, formal religious education, and the employee's self-description as a minister—are met and then, in order to check the conclusion suggested by those factors, ask whether the employee performed a religious function. The Supreme Court rejected this argument, stating that *Hosanna-Tabor* already held that a rigid test for the ministerial exception would be inappropriate. It stated that the fundamental protection established by the ministerial exception is that:

> When a school with a religious mission entrusts a teacher with the responsibility of educating and forming students in the faith, judicial intervention into disputes between the school and the teacher threatens the school's independence in a way that the First Amendment does not allow.

*Id*. at 2069. The Court held that establishing a rigid formula would too heavily intertwine courts into the functions of religious institutions.

Accordingly, the Court independently addressed the two plaintiffs' positions to determine whether the purpose of the ministerial was implicated. The Court stated that:

> When we apply this understanding of the Religion Clauses to the cases now before us, it is apparent that [plaintiffs] qualify for the exemption we recognized in *Hosanna-Tabor*. There is abundant record evidence that they both performed vital religious duties. Educating and forming students in the Catholic faith lay at the core of the mission of the schools where they taught, and their employment agreements and faculty handbooks specified in no uncertain terms that they were expected to help the schools carry out this mission and that their work would be evaluated to ensure that they were fulfilling that responsibility. As elementary school teachers responsible for providing instruction in all subjects, including religion, they were the members of the school staff who were entrusted most directly with the responsibility of educating their students in the faith. And not only were they obligated to provide instruction about the Catholic faith, but they were also expected to guide their students, by word and deed, toward the goal of living their lives in accordance with the faith. They prayed with their students, attended Mass with the students, and prepared the children for their participation in other religious activities.

*Id*. at 2066. The Court noted that although "their positions did not have all the attributes of [the plaintiff in *Hosanna-Tabor*]," including the fact that their titles did not include "minister," the Court held that "their core responsibilities as teachers of religion were essentially the same." *Id*.

Defendant's suggestion that *Our Lady of Guadalupe Sch.* changed law related to the ministerial exception is simply untrue. *Our Lady of Guadalupe Sch.* overturned the Ninth Circuit in two cases where the *Hosanna-Tabor* holding was not properly applied. The ministerial exception was addressed and applied in 2012. *See Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2066 ("In holding that Morrissey-Berru and Biel did not fall within the *Hosanna-Tabor* exception, the Ninth Circuit misunderstood our decision… It is true that [the plaintiff in *Hosanna-Tabor*]'s title included the term "minister," but we never said that her title (or her reference to herself as a "minister") was necessary to trigger the *Hosanna-Tabor* exception."). *Our Lady of Guadalupe Sch.* did not create new law.

Defendant even suggests that "the 'ministerial exception' applies to more than just ministerial employees", which was a change in the law following *Our Lady of Guadalupe Sch.* However, even that argument is not correct. The Court in *Our Lady of Guadalupe Sch.* stated in no uncertain terms that the exception only applied to "ministers." *Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2063. Indeed, citing to *Hosanna-Tabor*, the Court stated that the ministerial exception should "focus on the function performed by persons who work for religious bodies", not simply the role of the religious institution for which the employee works. *Id*. (*citing Hosanna-Tabor*, 565 U.S. at 198). Although the title "minister" is not necessary to the defense, the finding that an individual could be fairly characterized as a minister is required. *Our Lady of Guadalupe Sch.*, 140 S. Ct. at 2069–70 (Concurrence of Justice Thomas) ("I write separately,

however, to reiterate my view that the Religion Clauses require civil courts to defer to religious organizations' good-faith claims that a certain employee's position is "ministerial.").

Finally, Defendant argues that 42 U.S.C. § 2000bb-1(a) prevents this Court from rejecting the untimely amendment of its affirmative defense because applying Fed. R. Civ. Pro. R. 16 (b)(4) would substantially burden their exercise of religion. Of note, Defendant, as it does throughout its brief, cites to pre-*Our Lady of Guadalupe Sch.* for the proposition that the RFRA defense applied well before 2020. Notwithstanding, this argument cannot stand. Clearly courts regularly apply procedural rules and statutes to a party's First Amendment claim, including applying the statute of limitations to dismiss First Amendment claims. *See Owens v. Okure*, 488 U.S. 235, 251, 109 S. Ct. 573, 582, 102 L. Ed. 2d 594 (1989). Defendant cannot bypass Fed. R. Civ. Pro. R. 16 (b)(4) by making a blanket argument that procedural rules cannot apply to defenses under RFRA. Without a showing of good cause, Defendant's untimely defenses should not be allowed.

### 3. Futility

Although Judge Birzer did not rule that the RFRA amendment would be futile, this Court has *de novo* review. Fed. R. Civ. P. 72(b)(3). Accordingly, this Court can find that Judge Birzer's decision was proper for separate reasons from Judge Birzer's decision.

Here, Defendant has presented no argument to suggest that the ministerial exception, as explained in *Our Lady of Guadalupe Sch.*, would apply to a college volleyball coach. There is no allegation that Ms. Clark taught any form of religion, that she was obligated to pray with her players (or even that she did pray with her players), or that she had any role in the religious upbringing of the college students. The plaintiffs in both *Our Lady of Guadalupe Sch.* and *Hosanna-Tabor* involved grade school teachers tasked to teach the impressionable minds of

10

grade school students. Those plaintiffs were either called ministers, given a ministerial role, or, at very least, tasked to teach religion to students. As stated in *Our Lady of Guadalupe Sch.* and *Hosanna-Tabor*, the inquiry is into the *position*, not the institution. Thus, Defendant's bare argument that it is a religious institution is not enough to show application of the ministerial exception in this case. Defendant presents no evidence that Ms. Clark's position could even possibly be fairly characterized as ministerial.

### 4. Undue Prejudice

Discovery should have been concluded by now. Notwithstanding, even with the Court's extension to allow for the service of Plaintiff's rebuttal expert disclosure, discovery will now close in about 2 weeks. Despite Defendant's argument to the contrary, Plaintiff would be required to do additional discovery on a RFRA defense. Indeed, RFRA could act as a complete bar to Plaintiff's claims without even getting to the merits of whether Defendant violated Title IX or retaliated against Plaintiff. Plaintiff cannot simply rely on the non-targeted discovery that has taken place to-date to address such an overwhelming affirmative defense.

If Plaintiff is now required to conduct discovery on issues related to Defendant's Religious Order's mission or Plaintiff's job duties as it applies to the RFRA affirmative defense, an entirely new set of discovery must be completed. Defendant must identify all witnesses with information about the religious tenants of Defendant and even more largely, the Catholic church and how such doctrines of the faith are applied to all employees, whether coaches are required to incorporate issues of faith into their work, the habits and behaviors of all coaches and whether Ms. Clark is being singled out or discriminated against based on the defense. There will likely be unknown additional depositions that need to be scheduled to evaluate whether Defendant has any

evidence to support its new affirmative defense or whether this new "11th hour" affirmative defense has any merit. Potentially Plaintiff would need to seek judgement on the defense through a dispositive motion.

Although it is true that some discovery to date has tangentially uncovered information that might relate to Defendant's RFRA defense, Plaintiff has in no way engaged in meaningful discovery into the issue because it was not on notice, until the eve of depositions (that had already been set) and discovery cutoff, that such a defense would be asserted by Defendant.

It is worth noting that Plaintiff adamantly disagrees with Defendant's position that RFRA even potentially applies to Plaintiff, a college volleyball coach. Thus, until Defendant is granted the right to add what Plaintiff believes is a futile defense, Plaintiff would have no reason to engage in costly discovery to fully address that defense. Accordingly, Defendant's argument that it gave Plaintiff about 4 months to conduct discovery on the defense is disingenuous.

Additionally, Plaintiff prepared and appeared for her complete deposition in September 2020. At that time, the vast majority of Defendant's questions dealt with her performance as a volleyball coach, Defendant's employees' actions, Ms. Clark's Title IX complaint and issues related to her coaching. Ms. Clark answered questions potentially relevant to Defendant's RFRA defense without notice that such a defense was being asserted. Accordingly, although Defendant claims that additional discovery is not necessary, additional deposition testimony and additional discovery on Ms. Clark's conduct and other issues would certainly be necessary to combat Defendant's newly asserted affirmative defense.

5. **Timeliness**

The timeliness issue has been addressed in earlier arguments. If *Our Lady of Guadalupe Sch.* had actually altered the law that applied in this case, Defendant may have a stronger

argument that it was timely in seeking an amendment to its defense. That said, Defendant's attempt to stretch the decision well beyond its plain reading in this case must be disregarded. As such, Defendant's late attempt to create an entirely new theory of defense is untimely and should be denied.

### III. CONCLUSION

Defendant seeks to open an entirely new theory of defense in its lawsuit—one that simply does not apply. The proposed Amended Answer with a new defense under RFRA is not appropriate in this case. Ms. Clark had literally zero "ministerial" duties as a volleyball coach. Ms. Clark has complied with discovery and appeared for 7 hours of a deposition with no implication that her moral character was the source of Defendant's defenses. Plaintiff has no notice as to which character trait or conduct was claimed to be in violation of Catholic doctrine. The proposed amendment is futile, untimely and unfairly prejudicial to the Plaintiff. Ms. Clark respectfully requests that the Court deny the Defendant's pending motion on this issue.

Respectfully submitted,

/s/ Jennifer M. Hill
Jennifer M. Hill, #21213
Corey M. Adams, #27253
MCDONALD TINKER PA
300 W. Douglas, Ste. 500
Wichita, KS 67202
T:  316-263-5851
F:  316-263-4677
E:  cadams@mcdonaldtinker.com
    jhill@mcdonaldtinker.com
*Attorneys for Plaintiff*

### CERTIFICATE OF SERVICE

I hereby certify that on March 10, 2021, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following counsel of record:

>Alan L. Rupe
>Nanette Turner Kalcik
>Ellen C. Rudolph
>Colby Millard Everett
>LEWIS BRISBOIS BISGAARD & SMITH LLP
>1605 North Waterfront Parkway, Suite 150
>Wichita, Kansas 67206
>alan.rupe@lewisbrisbois.com
>Nanette.kalcik@lewisbrisbois.com
>ellen.rudolph@lewisbrisbois.com
>colby.everett@lewisbrisbois.com
>*Attorney for Defendants*

/s/ Jennifer M. Hill
Jennifer M. Hill