IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DESTINY CLARK,

        Plaintiff,

v.                                                                            Case No.  19-1033-JWB

NEWMAN UNIVERSITY, INC.,

        Defendant.

**MEMORANDUM AND ORDER**

This case comes before the court on Defendant Newman University's objection (Doc. 157) to Magistrate Judge Birzer's report and recommendation (Doc. 155).  The objection has been fully briefed and is ripe for decision.  (Doc. 159.)  Newman's objection is SUSTAINED and Newman's motion to amend its answer (Doc. 120) is GRANTED for the reasons stated herein.

**I.    Facts and Procedural History**

The factual background of this case was set forth in this court's prior memorandum and order (Doc. 65) and will not be repeated here.  In sum, Plaintiff Destiny Clark was employed by Defendant Newman University from May 2015 through June 2018 as the head volleyball coach.

In October 2017, Plaintiff filed a Title IX complaint listing concerns about a student athlete's inappropriate conduct and the failure of the basketball staff to control the athlete.  Plaintiff also asserted unequal access to the practice facilities.  The complaint was investigated by Mandy Greenfield, the head of Human Resources, and John Walker, a Title IX officer for Newman.  Ultimately, Plaintiff's employment with Newman ended.

-1-

Plaintiff filed this complaint on February 14, 2019, after receiving her right to sue letter from the EEOC. Plaintiff alleged the following claims: Title IX retaliation; violation of the Equal Pay Act; Title VII retaliation; hostile work environment; gender discrimination; intentional infliction of emotional distress; negligent hiring/retention; negligent training/failure to train; and negligent supervision. (Doc. 1.) Plaintiff's complaint included her supervisor Victor Trilli as a defendant. Both Defendants moved to dismiss Plaintiff's claim of intentional infliction of emotional distress and her three negligence claims. The parties continued to engage in discovery during the pendency of the dispositive motion. (Doc. 28.) Initial disclosures were exchanged in May 2019. (Docs. 22, 24.) The initial scheduling order included a July 19, 2019, deadline for any party to seek an amendment of pleadings. (Doc. 28.) Neither party sought an extension of that deadline. At the time, due to the pending motion to dismiss, Defendants had not yet filed their answer. On January 3, 2020, the court granted the motion to dismiss specific counts which also resulted in the dismissal of Trilli. (Doc. 65.)

On January 31, 2020, after being granted an extension, Newman filed a timely answer to Plaintiff's complaint. (Docs. 76, 77.) On February 25, 2020, following a discovery hearing, the written discovery deadline was set for June 19, 2020. (Doc. 85.) On June 22, 2020, another discovery order was entered. (Doc. 112.) This set a final discovery deadline of January 8, 2021, and included expert disclosure deadlines. That order was the fourth scheduling order in this case. No party had previously sought an extension of the prior deadline for amendment of pleadings. The June 22, 2020, discovery order indicated that written discovery was substantially complete at that time. (Doc. 112 at 1.) Plaintiff's deposition was conducted in September 2020. Plaintiff also scheduled several depositions to be conducted in the fall.

On October 15, 2020, Newman sought an agreement from Plaintiff's counsel to add an affirmative defense under the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb, and/or the ministerial exception doctrine based on a decision by the United States Supreme Court in *Our Lady of Guadalupe School v. Morrissey-Berru*, 140 S. Ct. 2049 (July 8, 2020).  In *Our Lady*, the Supreme Court discussed the "ministerial exception," which forecloses "certain employment discrimination claims brought against religious organizations" based on the First Amendment's Religion Clauses.  *Id.* at 2061 (citing *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012)).  "Under this rule, courts are bound to stay out of employment disputes involving those holding certain important positions with churches and other religious institutions. The rule appears to have acquired the label 'ministerial exception' because the individuals involved in pioneering cases were described as 'ministers.'" *Id.* at 2060 (citations omitted).

On October 22, Plaintiff would not agree to allow Newman to add the affirmative defense.  (Doc. 121 at 2.)  On November 5, 2020, Newman filed a motion to amend its answer and add the affirmative defense under the RFRA and/or the ministerial exception doctrine.  (Docs. 120; 121-1 at 22.)  The proposed amended answer states that "Plaintiff's claims are barred, in whole or in part, by the Religious Freedom Restoration Act and/or the Ministerial Exception Doctrine."  (Doc. 121-1 at 22.)

In its motion, Newman argued that the *Our Lady* opinion "expanded the ministerial exception to any employee of a religious organization that performs a vital role in advancing the mission of that organization."  (Doc. 121 at 3.)  Newman argued that *Our Lady* provided a basis for amendment in that it was recently decided and leave to amend should be freely given under Federal Rule of Civil Procedure 15.  On November 19, Plaintiff filed a response in opposition

arguing that Newman has not established good cause for amending the discovery deadline as Newman was not diligent in asserting the defense. (Doc. 123.) Plaintiff further argued that the addition of the defense would cause undue prejudice to Plaintiff if she were required to conduct discovery on an entirely new defense when discovery was almost closed. Plaintiff also argued that the amendment would be futile. In its reply, Newman argued its motion was timely in that Newman sought leave to amend only three months after the *Our Lady* decision. (Doc. 137.) Newman also claimed that Plaintiff would not be prejudiced because Plaintiff was aware that Newman is a Catholic University and that she was required to be held to the Sisters' standard for conduct as the women's volleyball coach. (Doc. 121 at 5.)

On November 25, 2020, Plaintiff filed notices pertaining to the depositions of certain defense witnesses. Those depositions were scheduled to begin on December 4. (Docs. 125-129.) On November 30, 2020, Newman filed an unopposed motion to amend the scheduling order regarding its expert disclosure deadline. (Doc. 130.) Newman sought to move its expert disclosure deadline from December 4 to January 8, 2021. Plaintiff's rebuttal expert disclosure would also be moved as a result to January 15, 2021. The motion was granted and the final discovery deadline was amended to January 22, 2021. (Doc. 131.) On January 15, Plaintiff filed a motion to extend the deadline to identify Plaintiff's rebuttal expert. (Doc. 149.) Plaintiff stated that she received defendant's expert disclosure on January 8 and sought Newman's agreement on an extension to disclose her rebuttal expert. That request was denied. Plaintiff sought an extension until February 12, 2021 because Plaintiff's potential expert was not able to prepare the report before that date due to the expert's schedule. Plaintiff stated that the extension of the deadline would not affect the remaining deadlines because the expert report is not dispositive to the claims. (*Id.* at 2.)

On February 2, 2021, Magistrate Judge Birzer held a hearing on the motion to amend and Plaintiff's motion for an extension of time to identify her rebuttal expert. (Doc. 153.) In that hearing, the parties extensively argued over the merits of the *Our Lady* decision and whether Plaintiff, as a volleyball coach, would be considered a minister for the purpose of the ministerial exception. With respect to taking diligent action in raising the motion to amend, Newman's attorney stated that the reason they took so long to seek leave to amend was because they were engaged in extensive discovery and they were "quite busy." (Doc. 167 at 13:9-14.) Magistrate Judge Birzer found that Newman did not sufficiently justify the delay between the decision in early July and the notification to Plaintiff in mid-October. (*Id.* at 36:16-21.) She further found that allowing the amendment would result in undue prejudice to Plaintiff in that the new defense was not borne out in discovery and would require additional discovery in a case that had already had multiple delays. (*Id.* at 37:3-23.) Magistrate Judge Birzer recommended that the motion to amend be denied. She later issued a written ruling. (Doc. 155.) Although Magistrate Judge Birzer denied Newman's motion, she did grant Plaintiff's motion to extend the time to identify her rebuttal expert and, as a result, extended the discovery deadline until March 26. (*Id.* at 21.)

Newman has filed an objection to the report and recommendation. (Doc. 157.) Newman objects to the magistrate's determination that its motion is untimely and that Plaintiff would be prejudiced by the amendment. Newman argues that it would be prejudiced by the refusal to allow the amendment and foreclose its defense under the First Amendment.

**II.     Analysis**

The court reviews objections to a magistrate's report and recommendation de novo and has considerable discretion in choosing the reliance to place on the findings and recommendations. *Johnson v. Barnhart*, 402 F. Supp. 2d 1280, 1281–82 (D. Kan. 2005). Here,

Newman does not argue that Magistrate Judge Birzer incorrectly applied the law but rather argues that her determinations under the law were erroneous.

As noted by Magistrate Judge Birzer, a party seeking to amend its answer after a deadline in a scheduling order must satisfy both Rule 16(b)(4) and Rule 15(a).  *See Gale v. City & Cty. of Denver*, 962 F.3d 1189, 1195 (10th Cir. 2020).  Rule 16(b)(4) requires that Newman show the scheduling deadline could not be met by diligent efforts.  *Id.*  To do so, Newman must provide an adequate explanation for the delay.  Newly discovered information can constitute good cause.  *Id.*  Rule 15(a) requires consideration of several factors, including timeliness, prejudice to Plaintiff, bad faith, and futility.  *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006).  "The purpose of the Rule is to provide litigants 'the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties.'"  *Id.* (citation omitted).  In recommending denial of the motion to amend, Magistrate Judge Birzer considered both the good cause and timeliness together because the two standards result in a similar analysis.  *See also Bylin v. Billings*, 568 F.3d 1224, 1231 (10th Cir. 2009) (noting the "rough similarity" between the "undue delay standard of Rule 15 and the good cause standard of Rule 16.")

Newman argues that it has shown good cause for the amendment in that the *Our Lady* opinion was not decided until July 2020 and Newman acted diligently in moving to amend a few months later.  Magistrate Judge Birzer found that Newman did not act diligently because it did not provide a sufficient explanation for the delay between the decision in July 2020 and notification to Plaintiff in October 2020.  Plaintiff argues that Newman cannot show good cause because the affirmative defense was available as far back as 2012 and the *Our Lady* opinion did not change the law.  A review of the opinions regarding the ministerial exception and the First Amendment protections is necessary based on Plaintiff's argument.

In *Hosanna-Tabor Evangelical Lutheran Church & School v. EEOC*, 565 U.S. 171 (2012), the Supreme Court first recognized the ministerial exception for employment discrimination claims involving a religious organization. In doing so, the Court discussed the First Amendment restriction on government interference with religious decisions. Prior to that date, the Court had not determined whether the First Amendment restriction extended to employment decisions. In *Hosanna-Tabor*, which involved a claim under the Americans with Disabilities Act brought by a teacher at a Lutheran school, the Court found that a "ministerial exception" applied to the religious institution which prevented the court from applying the law to the religious organization. *Id.* at 188-89. The Supreme Court explained that "[r]equiring a church to accept or retain an unwanted minister, or punishing a church for failing to do so, intrudes upon much more than a mere employment decision." *Id.* at 188. Applying these laws "interferes with the internal governance of the church, depriving the church of control over the selection of those who will personify its beliefs." *Id.* It "infringes on the Free Exercise Clause, which protects a group's right to shape its own faith and mission through its appointments." *Id.* Moreover, by interfering with the religious organization's decision regarding "which individuals will minister to the faithful also violates the Establishment Clause[.]" *Id.* at 189.

*Hosanna-Tabor* did not allow a blanket exception for any employee of a religious organization. Under the ministerial exception, a religious organization is exempt from employment claims if the employee is a "minister." In framing the exception, the Court declined to adopt a "rigid formula" for determining whether an employee is a minister. *Id.* at 190, 192. The majority in *Hosanna-Tabor* determined that the exception covered the plaintiff employee after considering "the circumstances of her employment." *Id.* at 190. These circumstances included (1) the employee's formal title, (2) "the substance reflected in that title," (3) the

employee's "use of th[e] title," and (4) "the important religious functions she performed." *Fratello v. Archdiocese of New York*, 863 F.3d 190, 192 (2d Cir. 2017) (quoting *Hosanna-Tabor*, 565 U.S. at 192); *see also Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 834 (6th Cir. 2015). Although courts recognized that these considerations need not be present in every case, the courts routinely recited the considerations in examining the exception as a "useful framework." *Grussgott v. Milwaukee Jewish Day Sch., Inc*., 882 F.3d 655, 659 (7th Cir. 2018).

There were two concurrences in *Hosanna-Tabor*. Justice Thomas opined that, in his view, "the Religion Clauses require civil courts to apply the ministerial exception and to defer to a religious organization's good-faith understanding of who qualifies as its minister." *Hosanna-Tabor*, 565 U.S. at 196 (Thomas, J. concurring). Justice Alito, joined by Justice Kagan, also filed a concurrence. In his opinion, the ministerial exception "should apply to any 'employee' who leads a religious organization, conducts worship services or important religious ceremonies or rituals, or serves as a messenger or teacher of its faith. If a religious group believes that the ability of such an employee to perform these key functions has been compromised, then the constitutional guarantee of religious freedom protects the group's right to remove the employee from his or her position." *Id.* at 199 (Alito, J. concurring).

In *Our Lady*, the Supreme Court was again faced with the ministerial exception in connection with employment claims made by two different elementary teachers at Roman Catholic schools. In both cases, the Ninth Circuit determined that the teachers did not fall within the ministerial exceptions after weighing the circumstances cited in *Hosanna-Tabor*. *Our Lady*, 140 S. Ct. at 2068. The Supreme Court reversed holding that it was error to apply a rigid formula. The Court found that the exception applied because the teachers had been entrusted to educate and form students in the faith. *Id.* at 2069. In *Our Lady*, the teachers performed "vital

religious duties," such as instructing students in the Catholic faith, guiding their students to live in accordance with the faith, praying with their students, attending Mass with their students, and preparing the students for participation in other religious activities. *Id.* at 2066.

Contrary to the Ninth Circuit's rulings, the circumstances in *Hosanna-Tabor* were not "inflexible requirements." *Id.* at 2064. "What matters, at bottom, is what an employee does." *Id.* In *Hosanna-Tabor*, the court noted that the teacher had "performed an important role in transmitting the Lutheran faith to the next generation." 565 U.S. at 192. So, the Court explained in *Our Lady* that "implicit in our decision in *Hosanna-Tabor* was a recognition that educating young people in their faith, inculcating its teachings, and training them to live their faith are responsibilities that lie at the very core of the mission of a private religious school." 140 S. Ct. at 2064. The Court went on to explain that this point was also made by Justice Alito when he concluded that the exception "should include 'any employee who leads a religious organization, conducts worship services or important religious ceremonies or rituals, or serves as a messenger or *teacher of its faith*.'" *Id.* (quoting *Hosanna-Tabor*, 565 U.S. at 199) (emphasis in original).

It is clear from *Our Lady* that the Supreme Court continues to take the position that a rigid test to determine whether an employee is a minister is inappropriate. However, *Our Lady* does expand *Hosanna-Tabor* by clarifying the importance of factors regarding an employee's role and expressly stating that the circumstances in *Hosanna-Tabor*, which were rigidly applied by the Ninth Circuit, may not even be "necessarily important" in other cases. 140 S. Ct. at 2064; *see also Doe 122 v. Marianist Province of United States*, No. SC 98307, 2021 WL 1287707, at *5, n. 7 (Mo. Apr. 6, 2021) (finding that the Supreme Court "strongly followed and even expanded *Hosanna-Tabor*" in *Our Lady*). Given the language in *Our Lady*, Newman's argument regarding a change in law can amount to good cause for modification to the previous scheduling

deadline pertaining to the amendment of pleadings.  Newman has a colorable argument regarding the change in law.  Moreover, because the decision was decided more than one year after the deadline, Newman could not have met the deadline to amend the pleadings in the initial scheduling order.

### A.  Timeliness

Turning to the issue of timeliness, Magistrate Judge Birzer found that Newman's delay of three months after the decision in *Our Lady* made the motion untimely and stated that Newman did not provide a sufficient explanation for the delay.  Newman argues that it was extensively engaged in ongoing discovery and conducting a significant number of depositions in this case and related Newman cases filed in this court.  Newman further asserts that it was also assessing the defense during this time. (Doc. 157 at 7-8.)  Plaintiff does not specifically address this three-month delay but rather takes the position that this defense was available earlier in this litigation and *Our Lady* did not change the law.  (Doc. 159.)  Therefore, Plaintiff argues, the defense is untimely because Newman should have raised it at the outset.  Notably, even Plaintiff concedes that Newman has a colorable argument that it was timely in bringing the defense if the court construes *Our Lady* as "altering" the law regarding the ministerial exception.  (*Id.* at 13.) Plaintiff went even farther in her initial response to Newman's motion to amend stating "[i]f the Supreme Court decisions had actually altered the law that applied in this case, Plaintiff would have to concede that is an issue beyond the parties' control."  (Doc. 123 at 11.)

In support of her decision that the three month-delay was untimely, Magistrate Judge Birzer cited to *Farr v. Jackson Nat'l Life Ins. Co.*, No. 19-4095-SAC-ADM, 2020 WL 5118068, at *1 (D. Kan. Aug. 31, 2020).  In that case, the court held that the defendant failed to establish good cause for the amendment because the defendant waited two months before it moved to

amend at the close of the discovery and did not act diligently in obtaining the information. The court noted that the defendant did not explain why this "fairly basic information was not or could not be obtained earlier through other discovery methods." *Id.* at 3. Therefore, although the two-month time period was a consideration, it was not the only basis that the court relied on to find a lack of good cause. Moreover, the motion in *Farr* was made at the close of discovery. Although Newman could have moved to amend sooner, there was still almost three months of discovery remaining at the time it notified Plaintiff of its intent to raise the defense. Moreover, at that time, Plaintiff had not yet filed notices for depositions. Had discovery been closed or if notice was provided closer to the close of discovery the court would have been inclined to find that the notice was untimely. However, given the recent Supreme Court authority and the fact that discovery was not closed and later extended, the court finds that Newman's motion to amend is not untimely and Newman has shown good cause for amendment.

### B. Undue Prejudice

Next, Newman argues that Plaintiff would not be unduly prejudiced by allowing the amendment in that it raised the amendment prior to the end of discovery and before Plaintiff conducted the depositions of defense witnesses. Newman further argues that Plaintiff's motion to extend discovery for her rebuttal expert was granted and resulted in discovery being extended for an additional two months. Newman asserts that it does not need to conduct any additional discovery on its defense and that Plaintiff did ask some questions that touched on the defense during the depositions of the defense witnesses. Plaintiff responds that she is prejudiced because she would be required to conduct discovery on these issues, although Plaintiff admits that "some discovery to date has tangentially uncovered information that might relate to" Newman's affirmative defense. (Doc. 159 at 12.)

In finding undue prejudice, Magistrate Judge Birzer discussed that the case had been "plagued with multiple delays.....[and] has been languishing in the discovery phase for more than 18 months already." (Doc. 155 at 13.) She further discussed that the "close of discovery has technically passed (although Plaintiff seeks an extension for her rebuttal expert). Essentially reopening discovery to include possible written discovery and/or depositions to flesh out Defendant's proposed defense is unduly prejudicial to Plaintiff in this nearly two-year-old case." (*Id.*) She further stated that although she is providing Plaintiff with additional time to disclose her expert, that this time "does not cure the additional effort and expense Plaintiff would incur by reopening discovery at this late stage." (*Id.* at 14.)

Under Rule 15, "undue prejudice" means "undue difficulty in prosecuting or defending a lawsuit as a result of a change of tactics or theories on the part of the movant." *Dartez v. Peters*, No. 15-3255-EFM-GEB, 2019 WL 3318185, at *11 (D. Kan. July 24, 2019) (citations omitted). While allowing an amendment may result in "practical prejudice," undue prejudice means that the amendment "would work an injustice to" Plaintiff. *Id.*

In finding undue prejudice, Magistrate Judge Birzer stressed the fact that discovery was closed. The discussion, however, does not address the fact that discovery was not closed at the time Newman notified Plaintiff of the defense and that the motion to amend was fully briefed prior to Plaintiff conducting several depositions. Given that circumstance, it is difficult to find that Plaintiff will be unduly prejudiced when she was on notice of the defense with almost three months remaining in discovery and depositions were not completed. Moreover, discovery was extended an additional two months to allow for Plaintiff's rebuttal expert. Currently, there is no dispositive motion deadline and the trial has yet to be set.

Although this case has had extended discovery, both parties have been involved in initiating the discovery disputes. The record does not support a finding that one party over the other has caused the delays in this case.

On this record, although the amendment may result in practical prejudice due to additional discovery should Plaintiff seek to conduct discovery on the new defense[1], the court does not find that Plaintiff will be unduly prejudiced by the amendment.

**C. Futility**

Finally, Plaintiff argues that the amendment should be denied because it would be futile. After reviewing futility, Magistrate Judge Birzer found that this factor was neutral although she also stated that she was not going to make specific findings. (Doc. 155 at 15.) "A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). The standard for determining the viability of a defense is set forth under Fed. R. Civ. P. 12(f), which provides that a party may move to strike an insufficient defense. *Layne Christensen Co. v. Bro-Tech Corp.*, No. 09-CV-2381-JWL-GLR, 2011 WL 3847076, at *6 (D. Kan. Aug. 29, 2011).[2]

---

[1] Although Newman takes the position that discovery is not necessary, the court's order does not preclude Newman and/or Plaintiff from conducting further discovery if it is appropriate.

[2] Although there is a disagreement in this district regarding the pleading standard for affirmative defenses, the majority has not required a defendant to plead affirmative defenses under the standards set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). *See Webb v. Walmart, Inc.*, No. 2:20-CV-2286, 2021 WL 351594, at *1–2 (D. Kan. Feb. 2, 2021); *Ross v. Sharp One, Inc.*, No. CV 19-2293-KHV, 2019 WL 5188673, at *1-2 (D. Kan. Oct. 15, 2019) (discussing cases); *Falley v. Friends Univ.*, 787 F. Supp. 2d 1255, 1258–59 (D. Kan. 2011). Rather, a defendant need only state in "short and plain terms its defenses to a plaintiff's claims." *Webb*, 2021 WL 351594 at *2 (quoting *Cagle v. The James St. Grp.*, 400 F. App'x 348, 355 (10th Cir. 2010)). Courts that have applied the heightened standard have allowed the defendant to amend or provide a more definite statement if the allegations did not comply with *Iqbal/Twombly*. *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 648-49 (D. Kan. 2009) (applying the heightened standard but allowing amendment); *Constr. Indus. Laborers Pension Fund v. Explosive Contractors, Inc.*, No. 12-2624-EFM, 2013 WL 3984371, at *2-5 (D. Kan. 2013) (striking one defense that failed as a matter of law and ordered a more definite statement on the remaining defenses); *Kinsale Ins. Co. v. Brandon Steven Motors, LLC*, No. 18-1239-EFM, 2019 WL 1953129, at *2-3 (D. Kan. May 2, 2019) (allowing the defendant to file an amended answer after the order).

This court need not state its position regarding the pleading standard for affirmative defenses. In viewing futility of a proposed amendment, Magistrate Judge Rushfelt, who has applied the heightened standard to defenses, noted, "[w]hether a defense satisfies the pleading requirements has no bearing on its ultimate viability because, as

Plaintiff has the burden here and must show that the defense "cannot succeed under any circumstances." *Falley*, 787 F. Supp. 2d at 1259. This is a "high bar." *Id.* Plaintiff has not raised a legal argument that would convince the court that this defense is "so utterly implausible that it cannot succeed under any circumstances." *Wilhelm v. TLC Lawn Care, Inc.*, No. 07-2465-KHV, 2008 WL 474265, at *2 (D. Kan. Feb. 19, 2008). Rather, Plaintiff argues that she is merely a volleyball coach and has no ministerial duties. Newman has asserted in the underlying briefing that Plaintiff impacted and mentored the student athletes and her "role undoubtedly called for role-model stewardship and behavior becoming of the Sisters' mission." (Doc. 135 at 8.) The parties clearly dispute Plaintiff's role and the Rule 12(f) standard prevents the court from resolving factual disputes. *Wilhelm*, 2008 WL 474265, at *2.

Under this standard, the court finds that the defense would not be subject to being struck. Therefore, the amendment is not futile.

### III. Conclusion

Defendant Newman's objection to Magistrate Judge Birzer's report and recommendation is SUSTAINED. (Doc. 157.) The court declines to adopt the Report and Recommendation (Doc. 155) and Defendant's motion to amend its answer (Doc. 120) is GRANTED. Newman is to file its amended answer within seven days of this order.

IT IS SO ORDERED.

       s/ John W. Broomes  
       JOHN W. BROOMES  
       UNITED STATES DISTRICT JUDGE

---

already mentioned, if the court were to find the defenses insufficient under a *Twombly/Iqbal* requirement, the preferred remedy is to allow Defendant to file a properly pled amendment to cure the insufficiency." *Layne Christensen*, 2011 WL 3847076, at *7.